UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

DAVID LOLA, on behalf of himself and
others similarly situated,

Plaintiff,

-against-

SKADDEN, ARPS, MEAGHER, SLATE &
FLOM LLP, and TOWER LEGAL
STAFFING, INC.,

Defendants.

-------------------------------------------------------------------

13-CV-5008 (RJS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

---

Stephanie L. Aranyos
Brian Gershengorn
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1745 Broadway, Floor 22
New York, NY  10019
(212) 492-2500
*Attorneys for Defendants*

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  STATEMENT OF FACTS ............................................................................................. 2

   A.   The Parties ............................................................................................................ 2

   B.   Lola Alleges Sufficient Facts to Show that He is An Exempt Professional ..................... 3

   C.   Lola Fails to Allege That Skadden is His "Employer" Within the Meaning of the
      FLSA ..................................................................................................................... 3

III. LEGAL ARGUMENT .................................................................................................. 4

   A.   Applicable Rule 12(b)(6) Standard ........................................................................... 4

   B.   The Allegations of Lola's Complaint Establish the Professional Exemption, Not a
      Claim for Relief ..................................................................................................... 4

   C.   Lola, a Licensed Attorney, was Engaged in the Practice of Law and Exempt from
      Overtime ............................................................................................................... 6

   D.   Lola, a Licensed Attorney Conducting Document Review for Pending Litigations,
      was Performing Exempt Work as a Matter of Law ....................................................... 7

      1.   Federal and State Law Recognize That a Contract Attorney Performing Document
         Review is Engaged in the Practice of Law ......................................................... 9

      2.   Courts Acknowledge that Document Review is of Critical Importance in Litigations 11

         a.   Document Review is Protected by Privilege ............................................. 12

         b.   Failure to Exercise Proper Judgment Can Lead to Waiver of Privilege ............... 12

         c.   Failure to Exercise Diligence and Judgment Can Lead to Sanctions ................... 13

      3.   Routine or Not, Document Review is Still the Practice of Law .................................. 14

      4.   Attorneys' Fees are Appropriate for Contract Attorneys Performing Document
         Review…………………………………………………………………………… .. 16

   E.   Skadden is Not a Joint Employer Within the Meaning of the FLSA and Should be
      Dismissed as a Defendant ....................................................................................... 19

1.   Plaintiff Has Not Alleged that Skadden had the Power to Hire and Fire Within the Meaning of the Economic Reality Test ........................................................................ 19

2.   Plaintiff Has Not Alleged that Skadden Supervised or Controlled Work Within the Meaning of the Economic Reality Test ....................................................................... 21

3.   Plaintiff Has Not Alleged that Skadden Determined the Rate or Method of Payment........................................................................................................................... 22

4.   Plaintiff Has Not Alleged that Skadden Maintained Employment Records Within the Meaning of the Economic Reality Test................................................................. 23

IV.   CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................4

*Baron v. Los Angeles*,
    469 P.2d 353 (Cal. 1970)............................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................4

*BNP Paribas Morg. Corp. v. Bank of America, N.A.*,
    Nos. 09 Civ 9783, 09 Civ. 9784, 2013 WL 2322678 (S.D.N.Y. May 21, 2013) ..................13

*Carlson v. Xerox Corp.*,
    596 F. Supp. 2d 400 (D. Conn. 2009)...........................................................................16, 17

*Carter v. Dutchess Cmty. Coll.*,
    735 F.2d 8 (2d Cir. 1984).............................................................................................19, 22

*Conopco, Inc. v. Roll Intern.*,
    231 F.3d 82 (2d Cir. 2000)...............................................................................................5

*Davis v. Rouse*,
    No. WDQ–08–cv–3106, 2012 WL 3059569 (D. Md. July 25, 2012) .....................................14

*Diaz v. Consortium for Worker Ed., Inc.*,
    10-civ-01848, 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) ...............................................21

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
    No. 08-cv-1992, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013)................................................17

*Godlewska v. HDA*,
    916 F.Supp.2d 246 (E.D.N.Y. 2013) ..........................................................................20, 22

*Grenawalt v. AT&T Mobility, LLC*,
    937 F.Supp.2d 438 (S.D.N.Y. April 2, 2013) ...............................................................20, 22

*Herrera v. Council for Human Services Home Care Services Corp.*,
    No. 05 Civ. 10734, 2008 WL 4104025 (S.D.N.Y. Aug. 28, 2008) ..........................................6

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)...........................................................................................4

*Hugee v. SJC Group, Inc.*,
    13-cv-0423, 2013 WL 4399226 (S.D.N.Y. Aug. 13, 2013) ............................................22, 23

*In re AOL Time Warner Shareholder Derivative Litigation*,
    No. 02 Civ. 6302, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) .................................17

*In re Enron Securities, Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................17

*In re NTL, Inc. Sec. Litig.*,
    244 F.R.D. 179 (S.D.N.Y. 2007) ...........................................................................13

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007).......................................................................................5

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007).............................................................16, 17, 18

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02-civ-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ..............................8

*Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*,
    No. 2:07-CV-116, 2012 WL 3731483 (S.D. Oh. Aug. 28, 2012) ...........................12

*Jacob v. Duane Reade, Inc.*,
    No. 11 Civ. 0160, 2012 WL 651536 (S.D.N.Y. Feb. 28, 2012) ...........................13

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
    838 F. Supp. 2d 111 (S.D.N.Y. 2011).............................................................. *passim*

*Kadden v. Visualex, LLC*,
    910 F. Supp. 2d 523 (S.D.N.Y. 2012).....................................................................15

*Land Title Abstract & Trust Co. v. Dworken*,
    193 N.E. 650 (Ohio 1934)........................................................................................11

*Laukus v. Rio Brands, Inc.*,
    No. 5:07CV2331, 2013 WL 978215 (N.D. Ohio Mar. 11, 2013)...........................14

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
    No. 96 Civ. 2064, 1996 WL 668862 (S.D.N.Y. Nov. 19, 1996) ...........................12

*Merck Eprova AG v. Gnosis S.P.A.*,
    No. 07-cv-5898, 2010 WL 1631519 (S.D.N.Y. April 20, 2010) (*Sullivan, J.*) ......13

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)..................................................................................................16

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..............................................................18

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
    723 F.3d 192 (2d Cir. 2013)....................................................................4

*Nakahata v. New York-Presbyterian Healthcare Syst., Inc.*,
    No. 11 Civ. 6658, 2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012)...............5

*Oberc v. BP PLC*,
    No. 4:13-CV-01382, 2013 WL 6007211 (S.D. Tex. Nov. 13, 2013) ............................ passim

*Parrish v. Manatt, Phelps & Phillips, LLP*,
    C 10-03200, 2011 WL 1362112 (N.D. Cal. Apr. 11, 2011) ....................................11

*People ex rel. Lawyers Inst. Of San Diego v. Merchants Protective Corp.*,
    209 P. 363 (Cal. 1922) ..........................................................................11

*Phillips v. Capital Toyota Inc.*,
    No 1:05-CV-215, 2006 WL 1408688 (E.D. Tenn. May 22, 2006) ..........6

*Pulse v. North Am. Land Title Co. of Montana*,
    218 Mont. 275, 707 P.2d 1106 (Mont. 1985) ......................................15

*Schomer v. Bd. of Bar Examiners*,
    987 N.E.2d 588 (Mass. 2013) ..............................................................15

*Scott v. Glickman*,
    199 F.R.D. 174 (E.D.N.C. 2001) ..........................................................13

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ........................................................11, 12

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985), *cert. denied*, 474 U.S. 903 (1985)............12

*Stubbs v. A-1 Nursing Care of Cleveland, Inc.*,
    No. 1:09-CV-1264, 2009 WL 2045398 (N.D. Oh. July 8, 2009) .............6

*T.P. ex. rel. Kimbrely R. v. City of Chicago Public School Dist. 299*,
    No. 10 C 2604, 2011 WL 1197353 (N.D. Ill. Mar. 29, 2011) ................18

*Takeda Chem. Indust., Ltd. v. Mylan Laboratories, Inc.*,
    Nos. 03-cv-8253, 04-cv-1966, 2007 WL 840368 (S.D.N.Y. Mar. 21, 2007).........................9

*Tampa Bay Water v. HDR Engineering Inc.*,
    No. 8:08-CV-2446-T-27TBM, 2012 WL 5387830 (M.D. Fla. Nov. 2, 2012) ...................8, 17

*Thompson v. U.S. Dep't of Housing and Urban Development*,
    219 F.R.D. 93 (D. Md. 2003) ................................................................14

*Tracy v. NRV, Inc.*,
    667 F.Supp.2d 244 (W.D.N.Y. 2009) .............................................20, 23

*United States v. Hardy*,
    681 F. Supp. 1326 (N.D. Ill. 1988) ....................................................15

*Wheeler v. Coss*,
    No. 3:06-cv-00717, 2010 WL 2628667 (D. Nev. June 28, 2010) .........18

*Wilcox v. Kirby*,
    No. 3:07-cv-359, 2009 WL 78436 (E.D. Tenn. Jan. 9, 2009) ............5, 9

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) ...............................................................21

STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") ............................ *passim*

29 U.S.C. § 213(a)(1) ..........................................................................6

N.C. GEN. STAT. ANN. § 84-2.1 ..............................................................10

RULES

29 C.F.R. § 541.300 ........................................................................7, 8, 9

29 C.F.R. § 541.301 ..........................................................................8, 15

29 C.F.R. § 541.304 ...................................................................... *passim*

Fed. R. Civ P. 12(b)(6) ...................................................................1, 4, 5

Fed. R. Civ. Proc. 37 ..........................................................................13

OTHER AUTHORITIES

N.C. Rules of Professional Conduct Rule 5.5 .....................................11

Ohio Rules of Professional Conduct Rule 5.5 .....................................11

Defendants Tower Legal Staffing, Inc. ("Tower") and Skadden, Arps, Slate, Meagher & Flom LLP[1] ("Skadden") respectfully submit this memorandum of law in support of their Fed. R. Civ P. 12(b)(6) motion to dismiss Plaintiff David Lola's ("Plaintiff" or "Lola") First Amended Complaint ("Amended Complaint"). For the reasons set forth below, the Court should dismiss this lawsuit on the basis that the Amended Complaint fails to contain sufficient factual allegations to state a claim for relief that is plausible on its face under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA").

## I.   **PRELIMINARY STATEMENT**

Lola's lawsuit is based upon the theory that a licensed attorney engaged in document review is not engaged in the practice of law.  This legal theory is flawed and refuted by the FLSA, overwhelming legal authority and common sense.  Document review, regardless of how glamorous it may or may not be, is a core attorney function performed by attorneys on a daily basis and requires attorneys to use their legal training.  Document review is critical to any litigation; and while it might not be as high-profile as arguing a motion or trying a case, it is a necessary and critical part of every litigation that constitutes the practice of law.

The importance of a licensed contract attorney performing document review was recognized less than a month ago by a federal court judge in Texas who held, without regard to any state law definition of "the practice of law", that a contract attorney engaged in a document review was engaged in the practice of law and thus, an exempt professional not covered by the FLSA's overtime provision. *See Oberc v. BP PLC*, No. 4:13-CV-01382, 2013 WL 6007211 at *7 (S.D. Tex. Nov. 13, 2013).  Additionally, courts recognize the legal significance of document

---

[1] Skadden is incorrectly identified in the Amended Complaint and Caption as Skadden, Arps, Meagher, Slate & Flom, LLP.

review by bestowing attorney-work product protection on an attorney's selection and categorization of documents because it reflects the attorney's judgment. *See* Section III.D.2.a *infra*. Moreover, when an attorney fails to properly perform document review, both the attorney and client face severe consequences, including waiver of privilege, sanctions, preclusion of certain claims or defenses, and even dismissal of the case. *See* Section III.D.2.b and c *infra*. Courts also routinely grant attorneys' fees incurred for document review performed by contract attorneys, and courts have specifically noted that the use of contract attorneys generally results in a significant savings in legal fees. *See* Section III.D.4 *infra*. Document review has such powerful legal repercussions because it is legal work.

Even if Plaintiff stated a claim under the FLSA, and he does not, it is clear from the face of the Amended Complaint that Skadden was not as a matter of law his employer. In this connection, Plaintiff does not allege facts showing under the applicable "economic reality" test that Skadden: (1) had the power to hire and fire; (2) supervised and controlled his work schedule or conditions of employment; (3) determined the rate and method of payment; or (4) maintained employment records. Indeed, many of his allegations actually support a finding to the contrary.

Accordingly, Defendants respectfully request that the action be dismissed for failure to state a claim.

## II.    STATEMENT OF FACTS

### A.    The Parties

Tower is a staffing company that provides attorneys on a contract and direct-hire basis to law firms and corporate law departments. First Amended Complaint ("Compl.") ¶6. Skadden is a law firm headquartered in New York City. *Id.* ¶3. David Lola, Esq. is a licensed attorney hired by Tower on a temporary basis to review documents in connection with pending litigations in

Ohio.  *Id.*  ¶ 9.  Lola was an employee of Tower and was paid by Tower directly.  *Id.* ¶10.  As

such, Tower instructed Lola to comply with Tower's procedures.  *Id.*

**B.**     **Lola Alleges Sufficient Facts to Show that He is An Exempt Professional**

As a contract attorney hired to perform document review, Lola analyzed "hundreds of

documents each day for the purpose of sorting the documents into certain categories."  *Id.* ¶¶21,

24.  Lola was allegedly "required to review documents under very specific guidelines set forth by

Defendants and to sort the documents based on those guidelines."  *Id.* ¶24.  Lola further claims

that his "entire responsibility while working for Defendants consisted of (a) looking at

documents to see what search terms, if any, appeared in the documents, (b) marking those

documents into the categories predetermined by Defendants, and (c) at times drawing black

boxes to redact portions of certain documents based on specific protocols that Defendants

provided."  *Id.* ¶28.  Based upon these alleged facts, Lola contends that he was not engaged in

the practice of law.  *Id.* ¶31.

**C.**     **Lola Fails to Allege That Skadden is His "Employer" Within the Meaning of the**
           **FLSA**

Lola, through conclusory statements mostly based "upon information and belief," alleges

that Skadden and Tower were joint employers within the meaning of the FLSA even though he

admits that he "was explicitly informed by Tower that he was an employee of Tower."  *Id.* ¶¶10,

15.  Lola claims that he was "explicitly informed that he was to follow Skadden's policies and

procedures during the project."  *Id.* ¶11.  Lola further claims that he was "directed and

supervised by Skadden attorneys" and that the procedures as to how he was to perform his job

were determined by Skadden (*id.* ¶¶11, 12), that Skadden had the power to terminate him from

Skadden's work and that a Skadden attorney interviewed him for a team lead position (*id.* ¶14),

and that Skadden maintained records of the actual hours he worked (*id.* ¶13).  Lola does not,

3

however, allege the type or degree of control necessary to establish that he had an employment relationship with Skadden.

## III.   LEGAL ARGUMENT

### A.   Applicable Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court should accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, there is a critical distinction between factual allegations and bald assertions or legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining plausibility is a context specific endeavor that requires the court to draw upon its experience and common sense. *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 197 (2d Cir. 2013) (internal citations omitted). To be plausible, the complaint must evidence more than a mere possibility of a right to relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

### B.   The Allegations of Lola's Complaint Establish the Professional Exemption, Not a Claim for Relief

Plaintiff's Amended Complaint falls well short of the plausibility standard required under *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*. Plaintiff's conclusory allegations, which are bereft of factual support, cannot be construed to amount to a plausible claim. Plaintiff attempts to create a claim and plead around the professional exemption by omitting from his pleading legal terms typically used in connection with any document review, such as "contract

4

attorney," "responsive," "non-responsive," "produce," "privileged" and "redact." *See*, *e.g.*, Compl. ¶¶24, 26, 28 (Plaintiff's duties consisted of reviewing documents, marking those documents as falling within a certain category, and redacting portions of certain documents). Even in omitting key legal parlance, it is clear from the Amended Complaint that Plaintiff engaged in the practice of law by deciding whether a document was relevant to the litigation, should be produced, and whether certain information should be redacted as privileged. In doing this analysis, Lola used his legal education, license, training and judgment in determining the significance of documents that he reviewed.[2]

Although Plaintiff fails to plead a plausible claim, he does establish that he is exempt from overtime requirements because he was a licensed attorney engaged in the practice of law. *See e.g.*, *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000) ("[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . an affirmative defense, and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."). Accordingly, Defendants' Rule 12(b)(6) motion should be granted. *See, e.g.*, *Oberc*, 2013 WL 6007211, at *6-7 (dismissing FLSA overtime claim because plaintiff, a contract attorney performing document review, was engaged in the practice of law); *Nakahata v. New York-Presbyterian Healthcare Syst., Inc.*, No. 11 Civ. 6658, 2012 WL 3886555, at *6 (S.D.N.Y. Sept. 6, 2012) (dismissing case where named plaintiffs were exempt professional employees); *Wilcox v. Kirby*, No. 3:07-cv-359, 2009 WL 78436, at *4

---

[2] Plaintiff's conclusory assertions that he "was not required or allowed to exercise any independent judgment" and that "the nature of his work required no legal analysis whatsoever" (Compl. ¶29) and thus he allegedly "did not practice law as part of his employment with Defendants" (*id*. ¶31) are "legal conclusions, deductions or opinions couched as factual allegations" that a court need not accept as true. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

(E.D. Tenn. Jan. 9, 2009) (dismissing FLSA claim because plaintiff, an attorney, was a professional exempt from the FLSA).[3]

## C.    Lola, a Licensed Attorney, was Engaged in the Practice of Law and Exempt from Overtime

The FLSA provides exemptions from overtime requirements for employees employed in "a bona fide . . . professional capacity . . ." 29 U.S.C. § 213(a)(1). Under rules promulgated by the Secretary of Labor pursuant to the FLSA, attorneys engaged in the practice of law are exempt "professional" employees:

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also shall mean: (1) <u>Any employee</u> who is the <u>holder of a valid license</u> or certificate permitting the practice of law or medicine or any of their branches and <u>is actually engaged in the practice thereof</u>[.]

29 C.F.R. § 541.304(a)(1) (emphasis added). The Secretary has promulgated other rules that describe "professional employees" as follows:

> (a)    The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1)    Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; and
>
> (2)    Whose primary duty is the performance of work:
>
>> (i)    Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

---

[3] *See also Herrera v. Council for Human Services Home Care Services Corp.*, No. 05 Civ. 10734, 2008 WL 4104025 at *2 (S.D.N.Y. Aug. 28, 2008) (dismissing FLSA overtime claim because plaintiff was exempt companionship worker); *Stubbs v. A-1 Nursing Care of Cleveland, Inc.*, No. 1:09-CV-1264, 2009 WL 2045398 at *2, (N.D. Oh. July 8, 2009) (same); *Phillips v. Capital Toyota Inc.*, No 1:05-CV-215, 2006 WL 1408688, at *4 (E.D. Tenn. May 22, 2006) (dismissing FLSA overtime claim because named plaintiff was exempt professional employee).

> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300. However, § 541.304 makes clear that these requirements (the salary basis and primary duty tests) do not apply to attorneys engaged in the practice of law. 29 C.F.R. § 541.304(d) ("[t]he requirements of § 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section.") Therefore, in order to satisfy the professional exemption, an employee need only be (1) an attorney; and (2) engaged in the practice of law. As a licensed attorney conducting document review in connection with pending litigations, Plaintiff—and the putative class members[4]—clearly fall within the scope of the professional exemption, and as a result, Lola's Amended Complaint must be dismissed.

**D.     Lola, a Licensed Attorney Conducting Document Review for Pending Litigations, was Performing Exempt Work as a Matter of Law**

An attorney hired to analyze documents in connection with pending litigations is practicing law, and is thus exempt from the FLSA as a matter of law. On November 13, 2013, a federal court judge in Texas decided the issue presently before this Court and held that:

> [a]ttorneys engaged in document review must assess the relevance and responsiveness of each document, along with any privilege issues presented. The mere fact that the task may be routine or constrained by guidelines does not make it any less "legal."

*Oberc,* 2013 WL 6007211, at *6.

Like Lola, Oberc was hired by a legal staffing company and staffed on a document review project overseen by a law firm. *Id.* at *1. Oberc alleged that he was exempt from the FLSA's overtime pay requirements because he only performed routine work that required no legal analysis or lawyerly judgment, as he was confined by detailed protocols for conducting the

---

[4] Again, as part of Plaintiff's attempt to plead by omission, Plaintiff omits the fact that this project was staffed exclusively with licensed attorneys.

review.  *Id.* at *3.  The court rejected this argument and dismissed the overtime claim, holding that Oberc was engaged in the practice of law and an exempt professional under the FLSA.  *Id.* at *6-7.

As recognized in *Oberc*, document review conducted by an attorney is the practice of law.  Lola's contrary assertion is devoid of any basis in law or common sense.  It is indisputable that a party involved in litigation must review and analyze documents to assess, *inter alia*, responsiveness to discovery requests, relevance to claims or defenses, attorney-client privilege or work-product issues, confidentiality concerns, and a myriad of other issues.  *See id.*  The attorney engaged in document review also must use his or her legal training in understanding the relevant factual and legal issues pertinent to the litigation, as well as general principles relating to attorney-client privilege.[5]

With the burgeoning document review requirements due to the proliferation of electronic discovery, it has become commonplace for law firms to utilize contract attorneys to assist with document review efforts.  *See, e.g., Tampa Bay Water v. HDR Engineering Inc.*, No. 8:08-CV-2446-T-27TBM, 2012 WL 5387830, at *16 (M.D. Fla. Nov. 2, 2012) (holding that it was reasonable for a party to use contract attorneys to conduct a "thorough review of the documents for privilege, responsiveness and substantive issues"); *In re WorldCom, Inc. Sec. Litig.,* No. 02-civ-3288, 2004 WL 2591402, at *21 n. 48 (S.D.N.Y. Nov. 12, 2004) ("[t]he extensive use of contract attorneys was justified by the need to review over ten million pages of documents and

---

[5] *See* III.C *supra*.  Unlike the analysis performed for other exempt employees, such as learned professionals (*see* 29 C.F.R. § 541.301(b)) and administrative employees (*see* 29 § C.F.R. 541.200(a)(3)), no analysis of whether the attorney's work requires the exercise of independent discretion and judgment is necessary.  *See Oberc*, 2013 WL 6007211, at *6 ("the salary and primary duty requirements of 29 C.F.R. § 541.300 are not applicable to attorneys engaged in the practice of law").

was a far more efficient way of proceeding than giving the task to more highly compensated counsel"); *Takeda Chem. Indust., Ltd. v. Mylan Laboratories, Inc.,* Nos. 03-cv-8253, 04-cv-1966, 2007 WL 840368, at *7 (S.D.N.Y. Mar. 21, 2007) ("[i]n complex litigation, contract attorneys are routinely used by well-established law firms who supervise their work."). Whether the attorney conducting such review is a contract attorney is irrelevant; document review is critical to discovery and attorneys conducting the review are practicing law. *Oberc*, 2013 WL 6007211, at *6-7.

    1. Federal and State Law Recognize That a Contract Attorney Performing Document Review is Engaged in the Practice of Law

   There is a dearth of authority as to whether federal or state law should be applied for purposes of defining "engaged in the practice of law" in the context of an FLSA claim. However, as discussed above, *Oberc* addresses this issue and supports the application of federal law.   In *Oberc*, plaintiff was a contract attorney licensed to practice law in Michigan and performing a document review in Texas.  2013 WL 6007211, at *1.  In reaching the conclusion that plaintiff was engaged in the practice of law and thus exempt from overtime, the court did not look to any state definitions – Michigan (the state in which plaintiff was licensed to practice law) or Texas (the state in which the document review took place) – to discern what constitutes the practice of law; rather, the court cited only to federal law, *i.e.*, 29 C.F.R. § 541.300 and 29 C.F.R. § 541.304.  *Id.* at *6-7.  Along similar lines, in *Wilcox*, 2009 WL 78436, at *3-4, the court held on reconsideration that the exemption from the FLSA applicable to attorneys "does not lie in the interpretation of" Tennessee law and instead analyzed the issue under federal regulations applicable to the FLSA.   Further, in cases awarding attorneys' fees for document review performed by contract attorneys, (discussed in detail in Section III.D.4 *infra*), courts do not

analyze whether contract attorneys are practicing law under any particular state law, but rather simply recognize that document review is legal work.

As described herein, and as set forth in *Oberc* above, the document review performed by Lola is so obviously and inescapably the practice of law that there is no need to look to any particular state definition of what constitutes the practice of law for this court to determine that Lola is an exempt professional under the FLSA.  However, even if the Court determined that federal law did not resolve the "practice of law" definition, and applied a state law definition, the same conclusion would be reached; that Lola was engaged in the practice of law and exempt from the FLSA.  The only state jurisdictions that Lola mentions in his complaint are North Carolina, where the document review took place, and Ohio, the jurisdiction where the litigations are pending.[6]  *See* Compl. ¶30.

Here, the document review performed by Lola would constitute the practice of law in both North Carolina and Ohio.  North Carolina General Statutes define the practice of law as "performing any legal service for any other person, firm or corporation, with or without compensation, specifically including . . . assisting by advice, counsel, or otherwise in any legal work[ ] and to advise or give opinion upon the legal rights of any person, firm or corporation" and provides that any reference to particular acts included within the definition "shall not be construed to limit" the general definition of the term.  N.C. GEN. STAT. ANN. § 84-2.1.  While there is no statute that defines the practice of law in Ohio, the case law is well established.  "The practice of law [in Ohio] is, as generally understood, the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with

---

[6] As a further example of Lola's attempt to plead by admission, Lola fails to plead what jurisdiction he is licensed in or the jurisdictions where the cases consolidated in the "multi-district litigation" arose.  *See* Compl. ¶9.

the adopted rules of procedure. . . . The practice of law is not limited to the conduct of cases in

court. It embraces the preparation of pleadings and other papers incident to actions and special

proceedings and the management of such actions and proceedings on behalf of clients before

judges and courts . . . and in general all advice to clients and all actions taken for them in matters

connected with the law." *Land Title Abstract & Trust Co. v. Dworken*, 193 N.E. 650, 652 (Ohio

1934).[7]  Thus, under either North Carolina's or Ohio's definition of the practice of law, Lola is

exempt from the FLSA.[8]

> 2.    Courts Acknowledge that Document Review is of Critical Importance in Litigations

Courts have frequently recognized document review as a task of critical import,

particularly in complex litigations. *See, e.g. Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329

(8th Cir. 1986) ("[i]n cases that involve reams of documents and extensive document discovery,

the selection and compilation of documents is often more crucial than legal research . . . .");

*Parrish v. Manatt, Phelps & Phillips, LLP*, C 10-03200, 2011 WL 1362112 at *2 (N.D. Cal. Apr.

11, 2011) ("the tasks of collecting client documents, reviewing those documents, and

determining which documents are relevant are essential – and often costly – parts of

---

[7] Other states use similarly broad definitions, which would warrant a finding that Lola was engaged in the practice of law. *See e.g., People ex rel. Lawyers Inst. Of San Diego v. Merchants Protective Corp.*, 209 P. 363, 365 (Cal. 1922) ("As the term is generally understood, the practice of law [in California] is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure."); *Baron v. Los Angeles*, 469 P.2d 353, 357 (Cal. 1970) ("[t]he Legislature adopted the state bar act in 1927 and used the term 'practice law' without defining it. The conclusion is obvious and inescapable that in doing so it accepted both the definition already judicially supplied for the term and the declaration of the Supreme Court (in Merchants) that it had sufficiently definite meaning to need no further definition.").

[8] Both North Carolina and Ohio contemplate and allow for a multi-jurisdictional provision of legal services. *See* N.C. Rules of Professional Conduct Rule 5.5; Ohio Rules of Professional Conduct Rule 5.5.

investigation and discovery [phases of litigation]").  Courts recognize the legal significance of document review in a number of ways.

a.   <u>Document Review is Protected by Privilege</u>

Courts have consistently identified a lawyer's analysis and categorization of documents as opinion work product, holding that such work constitutes the practice of law.  *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (holding that a lawyer's "selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product"), *cert. denied*, 474 U.S. 903 (1985).  Courts grant this opinion work product protection to an attorney's analysis and categorization of documents precisely because such tasks reflect the attorney's thought processes and theories regarding the litigation.  *See, e.g., Shelton*, 805 F.2d at 1329 ("[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research...We believe [counsel's] selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case.").

b.   <u>Failure to Exercise Proper Judgment Can Lead to Waiver of Privilege</u>

Additionally, an attorney's failure to exercise proper judgment and discretion in reviewing documents can result in the inadvertent production of privileged or work product materials, and a finding that the client has waived attorney-client privilege.  *See, e.g., Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, at *4-6 (S.D. Oh. Aug. 28, 2012) (party waived attorney-client privilege where it produced 347 privileged documents and failed to demonstrate that it had taken reasonable precautions to prevent disclosure); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 Civ. 2064, 1996 WL 668862, at *4-5 (S.D.N.Y. Nov. 19, 1996) (waiver found where party failed to take

12

reasonable precautions to prevent production of privileged material); *Scott v. Glickman*, 199 F.R.D. 174, 181 (E.D.N.C. 2001) (privilege waived by inadvertent disclosure of privileged document). Courts have found that a party uses reasonable measures to prevent disclosure of privileged documents through use of contract attorneys who are trained to identify privilege issues to review and analyze documents. *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL 651536, at *4 (S.D.N.Y. Feb. 28, 2012) (inadvertent production of privileged documents did not waive privilege where the party took reasonable steps to prevent the disclosure, which included retaining a team of contract attorneys to review voluminous amounts of electronic information); *BNP Paribas Morg. Corp. v. Bank of America, N.A.*, Nos. 09 Civ. 9783, 09 Civ. 9784, 2013 WL 2322678, at *5-6 (S.D.N.Y. May 21, 2013) (no waiver of privilege due to inadvertent production of privileged material because party used reasonable precautions to prevent disclosure, which included review by contract attorneys trained to identify privilege issues).

c.    Failure to Exercise Diligence and Judgment Can Lead to Sanctions

Finally, and perhaps even more significantly, an attorney's failure to exercise diligence and judgment in reviewing documents can lead to harsh sanctions for the attorney and their client. *See* Fed. R. Civ. Proc. 37 (a party that fails to comply with discovery obligations is subject to sanctions including adverse inferences, prohibition on admitting certain evidence, dismissal of claims in whole or in part and default judgments); *Merck Eprova AG v. Gnosis S.P.A.*, No. 07-cv-5898, 2010 WL 1631519, at *3-6 (S.D.N.Y. April 20, 2010) (*Sullivan, J.*) (issuing sanction against party and attorneys for failing to produce responsive documents); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 201 (S.D.N.Y. 2007) (adverse inference and costs were appropriate sanctions where defendant was grossly negligent in allowing the destruction of

relevant documents and ESI); *Thompson v. U.S. Dep't of Housing and Urban Development*, 219 F.R.D. 93, 104-105 (D. Md. 2003) (sanctions including, *inter alia*, precluding defendants from introducing 80,000 e-mail records that were not produced until after the close of discovery, were appropriate); *Davis v. Rouse*, No. WDQ–08–cv–3106, 2012 WL 3059569, at *2 (D. Md. July 25, 2012) (monetary sanctions awarded against party that produced large number of nonresponsive documents); *Laukus v. Rio Brands, Inc.*, No. 5:07CV2331, 2013 WL 978215, at *28 (N.D. Ohio Mar. 11, 2013) (dismissing plaintiff's claims as sanction for plaintiff's discovery misconduct).

3.    Routine or Not, Document Review is Still the Practice of Law

Plaintiff also contends that because his job duties were "routine" and he was "required to review documents under very specific guidelines," he was not practicing law.  Compl. ¶¶ 24, 25, 31.  However, Plaintiff's conclusory description of the work he performed on the litigations as "routine", (*id.* ¶25) is irrelevant and belied by his allegations and common sense; discovery is unique to every case.  Discovery work on large, complex litigations that requires attorneys to follow protocols (*id.* ¶29) can hardly be characterized as routine. But, even accepting Plaintiff's allegations as true, the fact that attorneys are required to follow guidelines to ensure quality and consistency for a particular project does not alter the *legal* nature of the discovery being performed, nor does it eliminate the need for attorneys to exercise their legal training and legal analysis in assessing each document.  *See Oberc*, 2013 WL 6007211, at *6 ("The mere fact that the [document review] task may be routine or constrained by guidelines does not make it any less 'legal.'")

No matter how Plaintiff characterizes the nature of his work, it inherently constitutes the

practice of law.[9]  There is simply no requirement that an attorney's work rise to a particular level

of difficulty or sophistication to constitute the practice of law.  *See, e.g.*, *Schomer v. Bd. of Bar*

*Examiners*, 987 N.E.2d 588, 592 (Mass. 2013) (lawyer's work as a contract attorney in New

York counted toward Massachusetts's practice of law requirement for admission to the bar

without examination); *Pulse v. North Am. Land Title Co. of Montana*, 218 Mont. 275, 282, 707

P.2d 1106, 1109 (Mont. 1985) ("drafting or filling in of blanks in printed forms of instruments

dealing with land" constitutes the practice of law); *United States v. Hardy*, 681 F. Supp. 1326,

1328-29 (N.D. Ill. 1988) ("[C]ommon sense dictates that the drafting of even a simple complaint

or an uncomplicated petition for dissolution of marriage requires at least some degree of legal

knowledge or skill . . . [and thus] constitutes the practice of law.").[10]

Plaintiff will undoubtedly argue that when an attorney is performing tasks that may

sometimes be performed by paralegals or legal assistants the attorney is not engaged in the

practice of law.  However, not only is this not the test, but it is also not true. Of course, many

---

[9] The New York State Department of Labor gave the example of a "licensed attorney who
chooses to work as a cook in a restaurant rather than practicing law" as someone who would not
be covered by the professional exemption.  *See* New York State Department of Labor, Opinion
Letter, RO-08-076, February 3, 2009.  As a licensed attorney who is undoubtedly performing
legal work, as opposed to a different line of work like a chef, Plaintiff falls squarely within the
exemption from overtime requirements.

[10] It should be noted that this case is not akin to *Kadden v. Visualex, LLC*, 910 F. Supp. 2d 523
(S.D.N.Y. 2012).  In *Kadden*, the court held that a litigation graphics consultant who held a law
degree was not exempt from the FLSA as a learned professional.  *Id.*  Unlike here, the plaintiff in
*Kadden* was not engaged in the practice of law nor did her position require a law degree.
Accordingly, the court did not consider 29 C.F.R. § 541.304, but rather only analyzed whether
the plaintiff fell within the professional exemption of the FLSA as a "learned professional"
pursuant to 29 C.F.R. § 541.301.  *Id.* at 534.  Judge Scheindlin held that plaintiff was not a
"learned professional" because "[t]he lack of a required course of specialized training for
graphics consultants and the fact that the common thread among the VisuaLex graphics
consultants was their experience in litigation support, rather than their particular educational
backgrounds, removes the position from the learned professional exemption."  *Id.* at 540.

litigation tasks are occasionally performed by paralegals and legal assistants.  *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[i]t has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. . . . for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.").  This does not change the conclusion that an attorney performing these tasks is engaged in the practice of law, as they inherently bring their legal training to bear in performing such tasks.  Recently, in *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 409 (D. Conn. 2009), the court evaluated the twenty-six largest post-PSLRA settlements and the percentage fee awards in each case.  Objectors to the settlements argued that, among other things, the lodestar was inflated because contract attorneys performed "paralegal tasks" and were not properly supervised.  The court found that argument to be unpersuasive based on the functions performed by the contract attorney, the training given to the contract attorneys, how their work was monitored and reviewed, and how they were supervised and in some instances removed because their performance was not adequate. The mere fact that attorneys are sometimes called on to perform tasks that may be considered more "routine" than others does not change the core nature of the work.  Indeed, courts have consistently awarded attorneys' fees for work performed by contract attorneys.

> 4.    Attorneys' Fees are Appropriate for Contract Attorneys Performing Document Review

Recognizing that document review constitutes the practice of law, courts routinely grant requests for attorneys' fees based on time billed by contract attorneys for performing document review.  For example, in *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 272

(D.N.H. 2007), the parties to a securities fraud class action sought approval of a settlement that

created a common fund and called for attorneys' fees representing 14.5% of the recovery.  An

objector claimed that the fee request was too high, arguing that fees incurred for document

review performed by contract attorneys should not have been included in the lodestar calculation,

but rather as a reimbursable expense.  *Id.*  The court rejected this argument because "[a]n

attorney, regardless of whether she is an associate with steady employment or a contract attorney

whose job ends upon completion of a particular document review project, is still an attorney." *Id.*

Numerous other courts have awarded legal fees incurred for document review by contract

attorneys.[11]

    In granting attorneys' fees for document review, courts have explicitly recognized that

document review by contract attorneys constitutes legal work.  For example, in *Carlson*, the

Objectors argued that contract attorneys performing document review should have been billed as

an expense rather than attorney time.  *Carlson*, 596 F. Supp. 2d at 409.  In rejecting that

argument, the court cited to the ABA Formal Opinion No. 00-420, "'an attorney may bill the

contract attorney's charges to the client as fees rather than costs when the client's reasonable

expectation is that the retaining lawyer has supervised the work of the contract lawyer or adopted

---

[11] *See, e.g., Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-cv-1992, 2013 WL 410103, at *10 (S.D. Cal. Feb. 1, 2013) (awarding over $391,000 in attorneys' fees for document review performed by contract attorneys, noting it was "reasonable to have [the contract attorneys] perform document review" as the "resulting attorneys' fees would have undoubtedly been exponentially higher" if the document review was performed by the attorneys overseeing the litigation); *Tampa Bay Water*, 2012 WL 538780, at *16 (awarding attorneys' fees and noting that "[w]hile the contract attorneys' fees are not insubstantial, it was certainly reasonable for HDR to utilize these individuals to conduct an adequate review of the massive volume of documents"); *In re Enron Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 785 (S.D. Tex. 2008) (prevailing party can recover fees for contract attorneys' services at market rates); *In re AOL Time Warner Shareholder Derivative Litigation*, No. 02 Civ. 6302, 2010 WL 363113, at *26 (S.D.N.Y. Feb. 1, 2010) (awarding and multiplying, per a lodestar formula, the fees' charged for temporary contract attorneys' document review).

17

that work as her own.' *Id.* (internal citations omitted).  *See also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 08-451, at 5-6 (2008)." *Id.* Additionally, the court noted that "[t]his objection was rejected by the court in *Enron*, and was also rejected by the court in *Tyco. See* 535 F. Supp. 2d at 272." *Id.*

Similarly, in *T.P. ex. rel. Kimbrely R. v. City of Chicago Public School Dist. 299*, No. 10 C 2604, 2011 WL 1197353 at *4 (N.D. Ill. Mar. 29, 2011), plaintiff sought to recover attorneys' fees as the prevailing party in an administrative hearing as prescribed by statute.  The defendant argued that attorney time spent engaging in document review was not recoverable because such work was "clerical work." *Id.* at *6.  The court noted that in the Seventh Circuit, courts do not allow the recovery of attorneys' fees for tasks that could be delegated to non-professional employees, but held that document review was not such a delegable task.  *Id.*  In rejecting the defendant's argument, the court held that "in light of their general complexity and overall importance to litigation, document review and the compilation of financial data for purposes of a fee request are activities appropriately considered 'legal work.'" *Id.  See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) (district court erred in reducing fees incurred for time spent by lead counsel to perform document review); *Wheeler v. Coss*, No. 3:06-cv-00717, 2010 WL 2628667, at *7 (D. Nev. June 28, 2010) (time spent reviewing documents, among other tasks, was properly billed as attorney time, noting it would be inappropriate to delegate such work to a secretary or paralegal).[12]

For all of these reasons Plaintiff's claim must fail.  Plaintiff concedes he is a licensed attorney, and reviewed documents in connection with pending litigations, which involved the

---

[12] Similarly, there is no distinction between a document review conducted by contract attorneys and a document review conducted by associates throughout the United States.

practice of law.  These are the only elements of the professional exemption governing overtime pay to attorneys.  Accordingly, Plaintiff's Amended Complaint should be dismissed.

**E.      Skadden is Not a Joint Employer Within the Meaning of the FLSA and Should be Dismissed as a Defendant**

Even if Plaintiff pled a claim under the FLSA—and he did not—Skadden is not a joint employer with respect to Plaintiff or any other contract attorney employed by Tower in connection with the pending complex-commercial cases.  To determine whether a person qualifies as an "employer" for purposes of the FLSA under the "economic reality" test, the court considers "whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal citation omitted).  Lola fails to plead facts sufficient to establish a joint employment relationship under this test and, therefore, Plaintiff's claims against Skadden should be dismissed.

> 1.      Plaintiff Has Not Alleged that Skadden had the Power to Hire and Fire Within the Meaning of the Economic Reality Test

Plaintiff's allegation that "Skadden had the power to terminate Mr. Lola's work for Skadden" (Compl. ¶14) fails to support a finding of joint employment.  To the contrary, as a matter of law, this allegation supports a finding that there is no joint employment relationship. For example, in *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 123-25 (S.D.N.Y. 2011), the court specifically concluded that the purported joint employer's power to "de-authorize" a worker from performing certain services was not the equivalent of the power to fire a worker where the worker was not precluded from performing other work for the subcontracting employer.  Similarly, even if Tower's contract attorneys are precluded from working on a project for Skadden, they are not necessarily precluded from performing other

19

work for Tower.  Moreover, Skadden did not exercise any alleged power to terminate Lola or any other contract attorneys; Tower retained the ultimate decision-making authority to terminate contract attorneys and the Amended Complaint (as opposed to the Complaint) does not allege anything to the contrary.  *See Grenawalt v. AT&T Mobility, LLC*, 937 F.Supp.2d 438, 449 (S.D.N.Y. April 2, 2013) (finding that the purported joint employer did not have the power to hire and fire and noting that purported joint employer "did not fire any guard directly" and that the "ultimate decision to fire a guard" did not remain with the purported joint employer); *Jean-Louis*, 838 F. Supp. 2d at 123 (in finding that purported joint employer did not have the power to hire and fire workers, the court noted the plaintiff's failure to show that purported joint employer actually terminated anyone).

Against this backdrop, Plaintiff's allegation that he was interviewed by a Skadden attorney for a promotion for a team lead position (Compl. ¶14) is irrelevant.  Participating in applicant screening efforts to ensure that applicants are qualified does not establish a purported joint employer's power to hire.  *See Godlewska v. HDA*, 916 F.Supp.2d 246, 258 (E.D.N.Y. 2013) (finding that the purported joint employer did not have the power to hire where it dictated minimum standards for a position and reviewed resumes to ensure applicants were qualified); *Oberc,* 2013 WL 6007211 at *6 (concluding that attorney's allegation that purported employer was involved with selection and hiring process when it requested attorney's resume for consideration was insufficient to establish employment relationship).  It therefore follows naturally that—even if true—allegations of interviewing for a promotion do not reflect a joint employer relationship.  In this connection, it is worth stressing that Plaintiff does not allege that he or anyone else was actually hired or promoted by Skadden.  *See Tracy v. NRV, Inc.*, 667 F.Supp.2d 244, 247 (W.D.N.Y. 2009) (court denied plaintiff's motion to amend complaint to add

new defendants, finding it notable that plaintiff did not allege that he or anyone else was hired by putative joint employer).[13]

> 2.     Plaintiff Has Not Alleged that Skadden Supervised or Controlled Work Within the Meaning of the Economic Reality Test

Plaintiff's allegations in paragraphs 11 and 12 of the Amended Complaint about Skadden's policies, procedures and supervision are also legally infirm.  In *Zheng*, the Second Circuit emphasized that "supervision with respect to contractual warranties of quality … has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement"  *Zheng* at 355 F.3d at 75.  General allegations that Skadden kept itself apprised of operations reflects only a "global view" of the business and "do[es] not show any direct supervision."  *Diaz v. Consortium for Worker Ed., Inc.*, 10-civ-01848, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (granting putative joint employer's motion to dismiss where plaintiff alleged that putative joint employer required employees to use certain forms and scripts, enforced general training requirements, outlined general requirements for specialized positions and kept itself apprised of operations).  Moreover, Skadden's alleged instruction to follow its "precise procedures" (Compl. ¶12) does not constitute supervision and control of Lola's work.  In *Jean-Louis.*, 838 F.Supp.2d at 128, the court held that specifying the work to be performed and communicating specifications to employees may constitute some

---

[13] In the absence of the right to hire and fire, the Second Circuit also applies the following "*Zheng* factors" for joint employer inquiries: (1) whether the premises and equipment of the purported joint employer are used for the plaintiffs' work; (2) whether the contractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the process of production for the purported joint employer; (4) whether responsibility under the contracts could pass from one subcontract to another without material changes; (5) the degree to which the purported joint employer or its agents supervised the plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for the purported joint employer.  *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir. 2003).  Plaintiff fails to allege facts in support of any of these *Zheng* factors in the Amended Complaint.

control over working conditions, but the existence of such control does not translate to a joint

employer relationship.  (internal citations omitted).  Likewise, in *Godlewska*, 916 F. Supp. 2d at

259, the court held that "[e]xercising quality control by having strict standards and monitoring

compliance with those standards does not constitute supervising and controlling employees'

work conditions."  Thus, a purported joint employer's requirement that particular instructions be

followed does not support joint employer status.  *See Oberc*, 2013 WL 6007211 at *6 (finding

that attorney's allegation that he was issued and required to follow purported employer's

instructions during document review project did not support an employment relationship).

> 3.     Plaintiff Has Not Alleged that Skadden Determined the Rate or Method of
>        Payment

With respect to pay, Plaintiff concedes the following:

> Mr. Lola was explicitly informed by Tower that he was an
> employee of Tower for purposes of this project.  Tower instructed
> Mr. Lola to comply with Tower's procedures.  Tower paid Mr.
> Lola directly.  Upon information and belief, Skadden paid Tower
> for Mr. Lola's services, and Mr. Lola's pay rate from Tower did
> not exceed [] this amount.

Compl. ¶10.  This allegation fails to support Skadden's alleged joint employer status.  To be

sure, even if Skadden paid Tower for Lola's services, which it did not, and Lola's pay rate did

not exceed that amount, there is no allegation in the Amended Complaint that Skadden

*determined* Lola's pay rate.  *Grenawalt*, 937 F.Supp.2d at 451 ("the test is whether a putative

joint employer determines pay rates, not whether it affects them") (internal citation omitted);

*Jean-Louis*, 838 F. Supp. 2d at 129-30 (citing same test).  Likewise, there is no allegation in the

Amended Complaint that Skadden determined the method of payment.  *Carter*, 735 F.2d at 12.

Indeed, in *Hugee v. SJC Group, Inc.*, 13-cv-0423, 2013 WL 4399226, at *7 (S.D.N.Y. Aug. 13,

2013), the court granted a motion to dismiss an FLSA overtime claim where the purported joint

employer did not issue paychecks to the plaintiff.  It held that the "key question" regarding

compensation in the FLSA joint employment context "is whether [the employer] had the authority to sign paychecks throughout the relevant [employment] period."  *Id*.  Significantly, Plaintiff admitted that "Tower paid Mr. Lola directly."  Compl. ¶10.

> 4.    Plaintiff Has Not Alleged that Skadden Maintained Employment Records Within the Meaning of the Economic Reality Test

Finally, Plaintiff alleges that "[u]pon information and belief, Skadden maintained records of Mr. Lola's actual hours worked."  Compl. ¶13.  However, simply maintaining records of hours worked does not support a finding of joint employment where such records are maintained for quality control purposes.  *See Hugee*, 2013 WL 439926, at *7-8 (granting putative joint employer's motion to dismiss where plaintiff failed to allege facts suggesting that putative joint employer maintained plaintiff's timesheets beyond quality control purposes); *Jean-Louis*, 838 F.Supp.2d at 131 (finding that where there was no evidence that maintenance of arrival and departure data was used to control day-to-day employment or for purposes beyond quality control, retaining such data was only an extension of control procedures to ensure that the purported joint employer received services to which it was entitled) (citing *Jacobson v. Comcast Corp.*, 740 F.Supp.2d 683, 692 (D. Md. 2010)).  Moreover, like in *Oberc*, 2013 WL 6007211 at *6, there is a "dearth of facts" evidencing that any entity other than the subcontractor maintained attorneys' employment records.  Finally, Plaintiff does not allege any facts about Skadden's record-keeping policies.  Plaintiff's conclusory allegations are not sufficient to raise Plaintiff's right to relief above a speculative level.  *See Tracy*, 667 F.Supp.2d at 247 (finding that plaintiff's mere boilerplate allegations that offered no supporting details regarding putative joint employer's record-keeping policies were insufficient to state a claim against putative joint employer).

Because of the legal deficiencies in Plaintiff's joint employment allegations against Skadden, Skadden should be dismissed from this action.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First Amended Complaint with prejudice.


Dated: New York, New York
          December 6, 2013


                              Respectfully submitted,

                              OGLETREE, DEAKINS, NASH,
                               SMOAK& STEWART, P.C.


                              By   /s/ Stephanie L. Aranyos
                                  Stephanie L. Aranyos
                                  Brian Gershengorn
                              1745 Broadway, Floor 22
                              New York, New York 10019
                              (212) 492-2500
                              *Attorneys for Defendants*

24