UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
DAVID LOLA, on behalf of himself and
others similarly situated,

                            Plaintiff,

       -against-                                13-CV-5008 (RJS)

SKADDEN, ARPS, MEAGHER, SLATE &
FLOM LLP, and TOWER LEGAL
STAFFING, INC.,

                          Defendants.
------------------------------------------------------------------------

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Stephanie L. Aranyos
Brian Gershengorn
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1745 Broadway, Floor 22
New York, NY  10019
(212) 492-2500
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM ................................................................................................................... 1

   A. THE FLSA EXEMPTION IS CLEAR ON THE FACE OF THE COMPLAINT ................................... 2

   B. LOLA'S RELIANCE ON JUDGE ABRAMS' DECISION IN HENIG IS MISPLACED ........................ 3

      1. Henig Goes Beyond the Requirements for the Professional Exemption ........................ 4

      2. The State Law Authority Relied on by Lola has No Bearing on What Constitutes the Practice of Law Under the FLSA ................................................................................ 6

II. PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT SKADDEN WAS HIS EMPLOYER WITHIN THE MEANING OF THE "ECONOMIC REALITY" TEST ........... 8

III. CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A&E Television Networks, LLC v. Pivot Point Entertainment*,
  No. 10 Civ. 9422, 2011 WL 6156985 (S.D.N.Y. Dec. 9, 2011) ................................................ 6

*Adams v. N.Y. State Educ. Dep't*,
  752 F. Supp. 2d 420 (S.D.N.Y. 2010) ....................................................................................... 2

*Arculeo v. On-Site Sales & Marketing, LLC*,
  321 F. Supp. 2d 604 (S.D.N.Y. 2004) ....................................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 1, 3

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  537 F.3d 144 (S.D.N.Y. 2013) .................................................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 1

*Camreta v. Greene*,
  131 S. Ct. 2020 (2011) .............................................................................................................. 4

*De Sylva v. Ballentine*,
  351 U.S. 570 (1956) .................................................................................................................. 7

*Diaz v. Consortium for Worker Ed., Inc.*,
  10-civ-01848, 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) ................................................... 9

*Grenawalt v. AT&T Mobility, LLC*,
  937 F.Supp.2d 438 (S.D.N.Y. 2013) .................................................................................. 8, 10

*Guinup v. Petr-All Petroleum Corp.*,
  No. 07 CV 1120, 2010 WL 3338800 (N.D.N.Y. Aug. 23, 2010) .............................................. 5

*Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*,
  No. 13 CV 1432 (S.D.N.Y. Dec. 11, 2013) .............................................................................. 3

*Hugee v. SJC Group, Inc.*,
  No. 13 Civ. 0432, 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) ........................................... 10

*In re Rowe,*
  80 N.Y.2d 336 (1992) ............................................................................................................... 5

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................................... 7

*Jacobson v. Comcast Corp.*,
   740 F.Supp.2d 683 (D. Md. 2010) ....................................................................................... 8

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
   838 F. Supp. 2d 111 (S.D.N.Y. 2011) ............................................................................. 8, 10

*Melo v. United States*,
   825 F. Supp. 2d 457 (S.D.N.Y. 2011) ................................................................................. 6

*Oberc v. BP PLC*,
   No. 4:13-CV-01382, 2013 WL 6007211 (S.D. Tex. Nov. 13, 2013) ........................ 4, 5, 6, 9

*Pippins v. KPMG, LLP*,
   921 F. Supp. 2d 26 (S.D.N.Y. 2012) ................................................................................... 3

*Pulse v. North Am. Land Title Co. of Montana*,
   218 Mont. 275 (Mont. 1985) ................................................................................................ 6

*Richland Cty. Bar Assn. v. Clapp*,
   703 N.E.2d 771 (1998) ......................................................................................................... 7

*Scott v. SSP Amer., Inc.*,
   No. 09 CV 4399, 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) ......................................... 5

*Sussman v. Grado*,
   746 N.Y.S.2d 548 (Dist. Ct., Nassau Cty. 2002) ................................................................. 6

**STATUTES**

*N.C. Gen. Stat.* § 84-2.1 (2013) ................................................................................................... 7

**OTHER AUTHORITIES**

29 C.F.R. § 541.304 ....................................................................................................................... 3

29 C.F.R. § 541.304(a)(1) ........................................................................................................ 2, 6

29 C.F.R. § 541.304(d) ............................................................................................................. 3, 5

60 Fed. Reg. 22122, 22123-24 ..................................................................................................... 3

Defendants Tower and Skadden respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff David Lola's First Amended Complaint.[1]

## I.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM

The Supreme Court emphasized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) that, while Rule 8 provides a notice pleading standard, it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679. "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . ." *Twombly*, 550 U.S. at 559. Thus, contrary to Plaintiff's contentions, the Supreme Court has rejected the notion that plaintiffs have a right to discovery of any sort absent the ability to plead a viable claim.

On a motion to dismiss, courts are required to draw only "***reasonable*** inferences" in Plaintiff's favor. *Iqbal,* 556 U.S. at 678 (emphasis added). To satisfy the requirements of *Twombly* and *Iqbal*, Lola must plead facts sufficient to show he was not an exempt professional, engaged in the practice of law, and "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim. *Iqbal* 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. In light of Plaintiff's pleading, and *Iqbal*, the Court can and should draw upon its judicial

---

[1] The abbreviated and capitalized terms used in this reply are defined in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Br."). Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss will be cited herein as "Opposition" or "Opp."

experience and common sense when evaluating this motion.[2]

### A.   The FLSA Exemption is Clear on the Face of the Complaint

The Amended Complaint establishes on its face that Lola is exempt from FLSA overtime requirements. The FLSA is clear that an employee who "is the holder of a valid license or certificate permitting the practice of law . . . and is engaged in the practice thereof" is exempt from overtime. 29 C.F.R. § 541.304(a)(1).[3] Plaintiff carefully avoids using the legal parlance typically used in connection with document review, such as "responsive," "non-responsive," "privileged" and "redact."[4] Despite Plaintiff's effort to plead his claim artfully, the only reasonable inference from Lola's allegations is that he was reviewing documents and determining whether they were responsive to discovery requests, flagging them for relevance to certain topics and redacting portions of the documents. *See* Def. Br. 4-5, 14. Judicial experience and common sense dictate that this analysis requires an attorney to apply (i) their legal training in understanding the relevant factual and legal issues pertinent to the litigation, and (ii) general legal principles relating to attorney-client privilege.[5] Accordingly, the Court need not accept Lola's conclusory allegations that his work "required no legal analysis" given that common

---

[2] Contrary to Plaintiff's assertion, the Court is in the best position to draw upon its "judicial experience and common sense" to evaluate whether or not Lola, a licensed attorney who was contracted to perform document review for a pending litigation, was an exempt professional. *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 429 (S.D.N.Y. 2010) (application of judicial experience requires district court to apply "practical test of objective experience").

[3] Plaintiff concedes that a court may properly dismiss a complaint based on an affirmative defense where such defense is clear from the face of the complaint. Opp. at 4. *See also* Def. Br. at 5-6.

[4] Instead, Plaintiff claims that "he merely read documents, determined whether those documents contained words identified by Skadden, sorted those documents into categories . . . and, on occasion, blacked out certain words according to Skadden's instructions." Opp. at 13.

[5] Lola also alleges that he was hired to review documents related to a multidistrict litigation ("MDL"). Thus, it is reasonable for this Court to infer that discovery related to MDL would itself be complex and not merely "routine."

sense and judicial experience lead to a contrary inference. *Iqbal*, 556 U.S. at 679.

Moreover, Plaintiff's attempt to create a salary basis requirement is contrary to the FLSA.[6]  Opp. at 18.  Lola portrays his $25 hourly rate as "very low, especially in light of the general profitability of the law firms and their attorneys" and thus an "exploitative practice." (Compl. ¶ 23.)  However, Lola's hourly rate far exceeds the minimum wage, and the salary requirement for other exempt professionals. Regardless, 29 C.F.R. § 541.304(d) makes clear that the salary requirements applicable to other exempt professional employees do not apply to attorneys. *See* Def. Br. at 6-7. As Plaintiff stated, FLSA exemptions "must be considered in light of their purpose."  Opp. at 8.  The federal overtime laws were not designed for advanced-degree professionals to accept premium wages and then make "gotcha" arguments that they were misclassified for every period they performed a task a non-professional could allegedly also complete.[7]  Here, Lola admits that he is a licensed attorney, engaged to perform document review for a pending MDL matter, and is therefore exempt.

### B.  Lola's Reliance on Judge Abrams' Decision in *Henig* is Misplaced

In *Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, No. 13 CV 1432 (S.D.N.Y. Dec. 11, 2013), Judge Abrams mistakenly stated that the issue of what constitutes the practice of law under 29 C.F.R. § 541.304 was one of first impression in the federal courts.  *Henig*, No. 13 CV 1432, at 5:12-15. In November 2013, a federal court, relying on only federal law, held that a contract attorney hired to analyze documents in connection with pending litigations is practicing law, and thus exempt from the FLSA.  *Oberc v. BP PLC*, No. 4:13-CV-01382, 2013 WL

---

[6] Plaintiff's claim that in fee award cases, fees for contract attorneys are awarded at "paralegal rates" is without merit.  Opp. at 17.  Plaintiff's assumption that every attorney makes a six-figure salary and charges hundreds of dollars an hour is simply not based in reality of the legal industry.

[7] *See, e.g.*, *Pippins v. KPMG, LLP*, 921 F. Supp. 2d 26, 55-56 (S.D.N.Y. 2012) (holding that audit associates were "well-educated and . . . well-compensated" and "not the sort of employees the FLSA was intended to protect").

6007211, at *6-7 (S.D. Tex. Nov. 13, 2013). Plaintiff's attempt to distinguish *Oberc* by claiming that the work that he performed was somehow different is simply unavailing. Opp. at 12. Despite Plaintiff's artful attempt to mask the true nature of his job duties, it is clear from the face of the Amended Complaint that Lola was performing the same type work that the *Oberc* court held to be the practice of law – document review.[8] Lola's attempt to classify his work as anything other than "assess[ing] the relevance and responsiveness of any document, along with any privilege issues" is devoid of any merit or common sense. *Oberc*, 2013 WL 6007211, at *6.

               1.     *Henig* Goes Beyond the Requirements for the Professional Exemption

In *Henig*, Judge Abrams reached beyond the FLSA to set out three specific inquires to determine the practice of law: "[1] whether the individual at issue renders legal advice to a particular client, [2] whether he holds himself out as an attorney, and [3] whether his duties require him to draw on legal knowledge and judgment[.]"[9] Opp. at 7. Following Judge Abrams' purported test in *Henig*, Plaintiff argues that the Amended Complaint does not establish on its face that Lola was engaged in the practice of law. Opp. at 8-10. However, the professional exemption (for attorneys) does not require a specific inquiry into an attorney's individual tasks. *See* Def. Br. at 6-7; 29 C.F.R. § 541.304(d); *see also Oberc*, 2013 WL 6007211, at *6 (finding

---

[8] Like Lola, Oberc was engaged in document review for a complex MDL matter, specifically, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010, 2:10-MD-2179 (E.D. La.). *Oberc*, 2013 WL 6007211, at *1; *see* Oberc Complaint at Para. 6.1.

[9] Under *Henig*, every attorney would have to be evaluated (under the 3-prong test) to determine whether their specific tasks constitute the practice of law. This is an unworkable standard and not what is contemplated by the bright line exemption for attorneys engaged in the practice of law under the FLSA. This Court is not obliged to follow the holding of another district court judge sitting in the same district. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011) (internal citations omitted)); *see also Arculeo v. On-Site Sales & Marketing, LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004) ("the decisions of district courts, even those located within the same district, are not binding on other district courts").

4

that arguments that the plaintiff's primary duty did not require "advanced knowledge are irrelevant"). The cases cited by Plaintiff in support of Judge Abrams' test are inapposite as those cases were decided under the executive exemption.[10] Even under the *Henig* analysis, Lola was engaged in the practice of law: (i) Lola provided legal services by reviewing and redacting documents in connection with a MDL matter; (ii) Lola is a licensed attorney hired to conduct document review; and (iii) by virtue of the fact that Lola attended law school and passed the bar, he inherently called upon his legal knowledge and judgment when reviewing each document.

Both Plaintiff and Judge Abrams rely on *In re Rowe,* 80 N.Y.2d 336, 341-42 (1992), for the proposition that an attorney must render legal advice to a client. In *Rowe*, the Court of Appeals held that a disbarred attorney who published an article regarding legal issues in a medical journal was not engaged in the unauthorized practice of law as the article "neither rendered advice to a particular person nor was intended to respond to known needs and circumstances of a larger group." *Rowe*, 80 N.Y.2d at 342. Unlike Rowe, Lola *was* providing legal services on behalf of a client – advising the client on the responsiveness and privilege of documents, and thus making recommendations as to whether particular documents should or should not be produced based on established legal standards.[11] Next, Judge Abrams' reliance on

---

[10] *See Scott v. SSP Amer., Inc.*, No. 09 CV 4399, 2011 WL 1204406, at * 7 (E.D.N.Y. Mar. 29, 2011) (explaining that an analysis of the an employee's primary duty is required to determine if an employee is an exempt executive under the FLSA); *Guinup v. Petr-All Petroleum Corp.*, No. 07 CV 1120, 2010 WL 3338800, at *7 (N.D.N.Y. Aug. 23, 2010) (same).

[11] Additionally, Judge Abrams' reliance on an opinion letter issued by the District of Columbia Court of Appeals committee on the Authorized Practice of Law for the premise that one must be "held out" as an attorney is misplaced and well beyond the statutory requirements of the FLSA, which only requires an attorney be licensed and engaged in the practice of law. Moreover, the cited opinion letter is not binding precedent, and this Court has no obligation to accept its conclusion. *See, e.g.*, *Melo v. United States*, 825 F. Supp. 2d 457, 463 n.2 (S.D.N.Y. 2011) ("an [American Bar Association] ethics opinion is not binding on this Court").

*A&E Television Networks, LLC v. Pivot Point Entertainment*, No. 10 Civ. 9422, 2011 WL 6156985 (S.D.N.Y. Dec. 9, 2011), and *Sussman v. Grado*, 746 N.Y.S.2d 548 (Dist. Ct., Nassau Cty. 2002), as support for the purported need to look at whether an attorney's duties require him to draw on legal knowledge and judgment is similarly misplaced. Both cases involved the determination of whether a *paralegal* was engaged in the practice of law by performing certain legal tasks and are not determinative on what constitutes a licensed attorney practicing law under the FLSA. An attorney engaged in document review fundamentally draws on his legal knowledge and judgment in reviewing and analyzing documents. Def. Br. at 8.[12]

        2.       The State Law Authority Relied on by Lola has No Bearing on What Constitutes the Practice of Law Under the FLSA

By Order, dated November 4, 2013, Your Honor requested that the parties "address the degree to which state law should inform the federal question of what constitutes that practice of law under 29 C.F.R. §541.304(a)(1)." All parties agree that what constitutes being "engaged in the practice of law" under 29 C.F.R. § 541.304(a)(1) should be governed by a federal standard. Def. Br. at 9; Opp. at 7. Indeed, the court in *Oberc* did not look to any state definitions to discern what constitutes the practice of law for purposes of the FLSA. *Oberc*, 2013 WL 6007211, at *6-7. Furthermore, without engaging in an in-depth state law analysis, courts have consistently awarded attorneys' fees to contract attorneys, acknowledging that document review

---

[12] Plaintiff's implication that he was not allowed to exercise his judgment or engage in legal analysis (Opp. at 10-12) is preposterous and suggests at most that Lola was not utilizing the legal knowledge and skills for which he was hired. Lola was to review documents as an attorney, following a protocol given to him. By Lola's logic, any attorney given a template to follow in drafting a contract would not be "allowed to exercise judgment." This type of work has been found to be the practice of law. *See Pulse v. North Am. Land Title Co. of Montana*, 218 Mont. 275, 282 (Mont. 1985); Def. Br. at 15. To claim that a licensed attorney, hired as an attorney to conduct document review critical to litigation, is exempt because that individual decided not to properly review documents is not warranted under the FLSA. Further, Plaintiff's reliance on *In re Bolte*, 699 N.W.2d 914 (Wis. 2005) is misplaced as it does not even address the type of document review at issue here.

is the practice of law. *See* Def. Br. 16-18; *see also In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007) ("**An attorney, regardless of whether she is an associate with steady employment or a contract attorney whose jobs ends upon completion of a particular document review project, is still an attorney.** It is therefore appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar.") (emphasis added).

Despite the fact that Plaintiff believes that the "practice of law" should be interpreted under a "federal standard," Plaintiff cites a litany of cases which are wholly inapplicable to the instant case.[13] *See* Opp. at 6-7, citing to cases applying Kentucky, Oklahoma, Iowa, New Jersey, Illinois, Utah, Maryland and New York state law defining the "practice of law." While state law is inapplicable to the definition of "practice of law" under the FLSA, even assuming *arguendo* that state law would inform the decision of "practice of law," the only states concerned would be North Carolina or Ohio. *See* Def. Br. at 10; *see also De Sylva v. Ballentine*, 351 U.S. 570, 581 (1956) (finding that California state law informs the federal court question because "it appears from the record that the only State concerned is California"). The definition of the "practice of law" under both North Carolina law and Ohio law clearly encompasses document review. *See* Def. Br. 11; *see also Richland Cty. Bar Assn. v. Clapp*, 703 N.E.2d 771 (1998) (finding that the "practice of law" includes conduct of litigation); *N.C. Gen. Stat.* § 84-2.1 (2013) (defining the "practice of law" broadly to include "any legal service . . . including . . . assisting by advice, counsel, or otherwise in any legal work . . . Provided, that the above reference to particular acts which are specifically included within the definition of the phrase 'practice law' shall not be construed to limit the foregoing general definition of the term, but shall be construed to include

---

[13] Similarly, Judge Abrams relies only on state law defining the practice of law in New York and D.C., which is wholly inapplicable in the instant case.

the foregoing particular acts, as well as all other acts within the general definition . . .").

## II. PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT SKADDEN WAS HIS EMPLOYER WITHIN THE MEANING OF THE "ECONOMIC REALITY" TEST

A careful review of Plaintiff's arguments only shows that there is no potential joint employer relationship here. As an initial matter, Plaintiff has not alleged that Skadden played any role in his hiring, which is the relevant inquiry here. *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 118, 123 (S.D.N.Y. 2011). At most, Plaintiff alleged that Skadden was involved in a decision about a potential promotion. Opp. at 20. However, Plaintiff has failed to cite a single case in which a court gave any weight to a putative employer's alleged involvement in a promotion after the hiring decision was made.

In addition, Plaintiff has not alleged that Skadden had the power to terminate his employment within the meaning of the economic reality test. Plaintiff attempts to distinguish *Grenawalt v. AT&T Mobility, LLC*, 937 F.Supp.2d 438, 449 (S.D.N.Y. 2013), and *Jean-Louis*, 838 F. Supp. 2d at 124, on the basis that the putative joint employer in those cases could not sever its own relationship with putative employees. Opp. at 20-21. However, Plaintiff's formulation misstates the underlying issue. *Grenawalt and Jean-Louis* make clear that the limited power to bar the plaintiff from providing services for the putative employer on a particular project through the direct employer alone does not reflect the power to terminate employment. Here, there is no allegation in the Amended Complaint that Skadden could keep Lola from working for another client through Tower or from providing services on another Skadden matter through a different contracting service. Notably, in *Jacobson v. Comcast Corp.*, 740 F.Supp.2d 683, 689-90 (D. Md. 2010), the court held that de-authorization of cable technicians did not support joint employer status even though the subcontractor had virtually no positions to fill other than positions involving performance of installation work for the putative

employer and gave no weight to the putative employer's ability to bar the individual from other work for the putative employer.[14]

Plaintiff's allegations that Skadden attorneys supervised his work and issued protocols covering the document review (Opp. at 21) do not support his contention that Skadden had control over the conditions of his employment. *See Diaz v. Consortium for Worker Ed., Inc.*, 10-civ-01848, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (allegations that putative employer, among other things, "required employees to report to certain work locations, . . . created forms and scripts that would be utilized by [employees], enforced general training requirements, outlined general requirements for specialized positions and kept itself apprised of operations . . . reflect only on a global view [of the business] and do not show any direct supervision"). Indeed, in *Oberc*, 2013 WL 6007211, an attorney's allegation that he was issued and required to follow a purported employer's instructions during a document review project did not support an employment relationship. Moreover, Skadden's exercise of quality control is entirely consistent with its ethical obligation to oversee the document review of an MDL matter for which it is counsel of record. This quality control is not equivalent to the day-to-day supervision that defines an employment relationship.[15]

With respect to control of pay, Plaintiff concedes that, at most, Skadden "influenced" his

---

[14] Plaintiff cites *Barfield* for the proposition that a putative joint employer's exercise of some authority regarding several of the economic reality factors, including the power to terminate, "helps" establish the economic reality of its status as a joint employer. *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 144 (S.D.N.Y. 2013). Opp. at 21. However, the *Barfield* court ultimately refrained from deciding whether formal control existed under the economic reality test and held that the record established functional control under *Zheng*. *Id.* at 145. However, unlike in *Barfield*, Plaintiff fails to allege facts in support of more than possibly one of the six *Zheng* factors.

[15] Skadden is not a "joint employer" within the meaning of the FLSA, and moreover, Plaintiff's attempt to claim that Tower is engaged in the unauthorized practice of law (Opp. at 7 n. 3) is absurd and should not be given any merit.

9

rate of pay and cites *Barfield* for the proposition that, where a putative employer sets a cap on hourly pay, this factor does "not tilt decisively either way." Opp. at 22, citing *Barfield*, 537 F.3d at 144-45. Plaintiff fails to address the more recent cases affirmatively holding, as they logically should, that the applicable test is whether a putative employer *determines* pay rates, not whether it *influences* them. *Grenawalt*, 937 F. Supp. 2d at 451; *Jean-Louis*, 838 F. Supp. 2d at 129-30. Indeed, Plaintiff does not allege that Skadden determined his rate of pay as required by *Grenawalt* and *Jean-Louis*. Separately, Plaintiff makes no claim whatsoever that Skadden determined his method of payment and concedes that "Tower paid Lola directly." (Compl. ¶10.)

Finally, Plaintiff does not adequately allege that Skadden maintained employment records within the meaning of the economic reality test. Opp. at 22. In attempting to distinguish *Hugee v. SJC Group, Inc.*, No. 13 Civ. 0432, 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013), Plaintiff ignores the key allegation in *Hugee*, which parallels Plaintiff's claim in the instant case, that the purported joint employer *paid the subcontractor according to the hours worked and reported by the security guards* employed by the subcontractor. *Id.* at *2 (emphasis added). As Plaintiff acknowledges, the *Hugee* court nevertheless held that the timesheets were kept only for quality control purposes and granted the putative employer's motion to dismiss. *Id.* at *7-8. Opp. at 22. Because Plaintiff's joint employment allegations against Skadden are legally infirm, Skadden should be dismissed from this action.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First Amended Complaint with prejudice.

Dated: New York, New York  
January 24, 2014

Respectfully submitted,  
OGLETREE, DEAKINS, NASH, SMOAK  
& STEWART, P.C.

By  /s/ Stephanie L. Aranyos  
    Stephanie L. Aranyos  
    Brian Gershengorn

10