DAVMLOLC

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    -------------------------------x

 3    DAVID LOLA, on behalf of
      himself and all others
 4    similarly situated, and GERALD
      RUSH,
 5
                      Plaintiffs,
 6
              v.                              13 Civ. 5008 (RJS)
 7
      SKADDEN ARPS MEAGHER SLATE &
 8    FLOM LLP and TOWER LEGAL
      STAFFING, INC.,
 9
                      Defendants.
10
      -------------------------------x
11                                           New York, N.Y.
                                             October 31, 2013
12                                           12:50 p.m.

13    Before:

14                      HON. RICHARD J. SULLIVAN,

15                                           District Judge

16                             APPEARANCES

17    JOSEPH HERZFELD HESTER & KIRSCHENBAUM
            Attorneys for Plaintiffs
18    BY:  DANIEL MAIMON KIRSCHENBAUM
           DENISE A. SCHULMAN
19
20    OGLETREE DEAKINS NASH SMOAK & STEWART
            Attorneys for Defendants
21    BY:  BRIAN J. GERSHENGORN
           STEPHANIE L. ARANYOS
21
22

23

24

25

DAVMLOLC

1        (Case called)

2        THE COURT:  I am sorry to keep you all waiting.  I had

3   a jury note that required some legal instructions, so I'm doing

4   that now.

5        MR. KIRSCHENBAUM:  Maimon Kirschenbaum and Denise

6   Schulman.  Good afternoon, your Honor.

7        THE COURT:  Good afternoon, Mr. Kirschenbaum and

8   Ms. Schulman.  Good afternoon.

9        MR. GERSHENGORN:  Good afternoon, your Honor Brian

10  Gershengorn with Ogletree for the defendants.

11        THE COURT:  Mr. Gershengorn.

12        MS. ARANYOS:  Stephanie Aranyos.

13        THE COURT:  I'm very sorry to keep you waiting as long

14  as you've been waiting.  For those who of you know me and have

15  had matters before me, I don't double and triple book.

16  Sometimes I miscalculate and today I really miscalculated and

17  was compounded by the fact that I have a jury deliberating.  My

18  apologies to you.  I know you have busy lives and lots of

19  clients and waiting around a courtroom is not ideal.  I'm sorry

20  for that.

21        We are here in connection with the defendants'

22  premotion letter and contemplated motion to dismiss the

23  complaint.  It's a very interesting issue and it's one that I

24  think we will clearly need further briefing.  My reason for

25  premotion conferences is to see if we could vet these issues,

DAVMLOLC

1  perhaps narrow their focus or see if there are certain facts or

2  arguments that should be put to the side or at least not the

3  focus of the ultimate briefing.  I never tell a party they

4  can't make a motion, certainly a motion to dismiss, which they

5  have a right to make.  I do sometimes tell parties, I think

6  it's dead on arrival and I am not going to stay discovery

7  pending the briefing, but I don't think a judge should tell

8  someone you can't make a motion.

9        With that, I reviewed the premotion letters of the

10  parties and so we have what I think is an interesting issue.

11  The federal statute makes clear that -- let me just quote it.

12  We have an issue as to whether Skadden is in fact the employer.

13  That is an interesting question in and of itself.

14        Then we also have the issue of whether or not, based

15  on the pleadings, whether plaintiff was engaged in the practice

16  of law, which would subject him to an exemption for

17  professional employees.  Let's start with the second one, but

18  I'm happy to touch on the first one, too.

19        Is that a federal law issue or is it a state law issue

20  as to whether someone is engaged in the practice of law?

21  Different states define the practice of law differently, it

22  seems to me.  What do you think?

23        MR. GERSHENGORN:  I think that is right, your Honor.

24  This case is brought pursuant to the FLSA.  And while states do

25  interpret what it does mean to be engaged in the authorized

DAVMLOLC

1   practice of law, we believe that the FLSA makes it clear that

2   for the professional exemption to apply, any employee who is

3   the holder of a valid license or a certificate permitting the

4   practice of law or medicine or any of their branches and is

5   actually engaged in the practice thereof.  And if that

6   requirement is met, your Honor, under the FLSA, an individual,

7   such as an attorney or a contract attorney in this case, would

8   be exempt under the statute.

9        THE COURT:  All right.  Is this federal common law or

10  does it matter whether North Carolina does things differently

11  than Ohio or New York?

12       MR. GERSHENGORN:  Well, I think, your Honor, the case

13  law within this circuit and elsewhere that has looked at this

14  issue looks to whether or not an individual is engaged in the

15  practice of law.  And the courts have looked at this not

16  directly on point for a case --

17       THE COURT:  What does it mean to be engaged in the

18  practice of law?

19       MR. GERSHENGORN:  To that point, your Honor, the

20  courts have looked under fees issues, whether or not fees could

21  be assessed in regards to contract attorney's work.  And the

22  courts have upheld, that, yes, fees can be assessed.

23       In the Wilcox Kirby case, your Honor, a case out of

24  the Eastern District of Tennessee, the court, in upholding the

25  exemption for a government district attorney, an attorney

DAVMLOLC

1    practicing in the district attorney's office, the Court said

2    that the basis for the plaintiff's exemption lies solely in her

3    status as a licensed attorney.

4              THE COURT:  There is no question that the attorney

5    here is licensed.  Not licensed in North Carolina, but

6    licensed.

7              Keep going.

8              MR. GERSHENGORN:  So a licensed attorney engaged in

9    the practice of law and the fact that it is her primary

10   responsibility, which is to be engaged in the practice of law.

11             Here we have an individual, Mr. Lola, who is a

12   contract attorney who states in his pleading that he is, in

13   fact, an attorney.  He was hired by the defendant to perform

14   such services.  And while plaintiff tries to plead around the

15   aspects of what a contract attorney would do to practice law,

16   here Mr. Lola was clearly engaged in document review.  And what

17   that entails is simply looking for responsive, nonresponsive,

18   privileged, confidential documents.  And while plaintiff

19   doesn't use those terms in his pleadings, rather, your Honor,

20   he states that he reviewed documents and marked those documents

21   and redacted portions of documents.  In essence, this is what

22   many first and second-year attorneys do in a number of firms

23   who we would say are engaged in the practice of law, your

24   Honor.

25             THE COURT:  I think at least the question that's an

DAVMLOLC

1    interesting academic question is, if this person, who is

2    licensed, was hired but all they did was photocopy for 12 hours

3    a day, would that person be exempt from the Fair Labor

4    Standards Act?

5         MR. GERSHENGORN:  I think that is a different issue,

6    your Honor.

7         THE COURT:  That's a different hypothetical.  But sort

8    of meet me halfway on the hypothetical.  Would that person be

9    engaged in the practice of law, such that they are exempt under

10   the Fair Labor Standards Act, or would be forced to say no,

11   that's not the practice of law.  That's photocopying.

12        MR. GERSHENGORN:  I think that is different, your

13   Honor.  I think the individual is engaged solely in

14   photocopying, that individual would not be engaged in the

15   practice of law.  The New York State Department of Labor has

16   touched on similar issues where an individual who worked in a

17   restaurant and was a cook, was also an attorney, there the New

18   York Department of Labor said, that individual is not engaged

19   in the practice of law, that individual --

20        THE COURT:  That's even easier.

21        MR. GERSHENGORN:  And so I think that there is a

22   distinction.  Distinction here is that Mr. Lola, a licensed

23   attorney, was on a document review and, therefore, the

24   defendants contend is, in fact, engaged in the practice of law

25   and fits within the exemption.

DAVMLOLC

1          THE COURT:  Does it matter where he's licensed?

2          MR. GERSHENGORN:  For purposes of the exemption it

3     doesn't, your Honor.

4          THE COURT:  Let's think about that.  If he's licensed

5     as an attorney in England and he's doing document review in

6     North Carolina, does that make him licensed?

7          MR. GERSHENGORN:  I think that becomes an issue of

8     whether or not the individual would be authorized to practice

9     law within that jurisdiction.

10         THE COURT:  I presume a person who is licensed in New

11    York is not going to be authorized to practice in North

12    Carolina unless they get admitted pro hac vice or they are

13    under the supervision of someone.

14         Your view is it may matter, but it should not matter

15    here?

16         MR. GERSHENGORN:  It may matter certainly, your Honor,

17    whether or not they are engaged in the authorized practice of

18    law.

19         I think as far as the exemption is concerned, Mr. Lola

20    in this particular instance would fit within the exemption as

21    an attorney authorized and engaged in the practice of law.

22         THE COURT:  I wanted to address these issues

23    separately.  Let's hear from Mr. Kirschenbaum.

24         You're carrying the ball for your team,

25    Mr. Kirschenbaum?

DAVMLOLC

1          MR. KIRSCHENBAUM:  Yes, your Honor.

2          THE COURT:  What about that?  The argument is that

3    this is document review, it's not exciting, it's not the best

4    aspect of the job, but it's something that first-year

5    associates do all the time.  The fact that now law firms are

6    farming that out to cheaper providers doesn't mean that it's

7    not the practice of law.  It just means that it's silly to pay

8    top dollar for that job when you can find people who are

9    capable of doing it at a lower price.

10          What makes it not a practice of law?

11          MR. KIRSCHENBAUM:  I want to use your Honor's earlier

12    hypothetical of photocopying, and I understand that this is

13    only slightly, but it is different than photocopying.  Lawyers

14    photocopy all the time.  I don't know about what they do at

15    Skadden, but I know I photocopy all the time.

16          THE COURT:  So do judges, by the way.

17          MR. KIRSCHENBAUM:  I think the question is, like with

18    any FLSA exemption, you have to take a look at the totality of

19    the person's duties.  A first-year associate, while he could be

20    stuck in a room doing document review for six months at a time,

21    at any given time he could be pulled back and asked to write a

22    legal memo or to come to a client meeting.  This individual is

23    required to do one thing and one thing only, and that is locate

24    search terms on documents and categorize the documents based on

25    predesignated categories.

DAVMLOLC

1          I don't really understand how this can be analyzed

2    without the factual analysis of what plaintiff was doing.  Your

3    Honor asked the question, well, does it matter what

4    jurisdiction he was admitted into?  I think it matters and it's

5    a factual question.  Where was he practicing law?  What were

6    the laws implicated in the case?  I'm allowed to practice in a

7    case in Ohio if it's a case brought under New York law and the

8    facts -- there are too many factual questions at this point to

9    simply dispose of it by saying, the fact that he was a lawyer

10   and reviewing documents automatically makes it the practice of

11   law.

12         THE COURT:  Well, I mean, I guess the issue is what

13   are the facts alleged in the complaint.  And based on those

14   facts, is it clear that the person is exempt, that the

15   plaintiff is exempt from the FLSA, Fair Labor Standards Act.

16         MR. KIRSCHENBAUM:  I am not sure and it's unclear

17   whether defendants dispute the facts in the complaint or not.

18   If they are disputing the facts in the complaint, then there is

19   a factual analysis.  If they do not dispute the facts in the

20   complaint, I think that facts in the complaint lay out exactly

21   what this individual's duties were from beginning to end.  All

22   he did are the things listed in the complaint.  I think given

23   that that is the entire scope of his duties, I think it is

24   clear that in any jurisdiction that it does not constitute the

25   practice of law.

DAVMLOLC

1        THE COURT:  I am just looking at the complaint.

2        MR. KIRSCHENBAUM:  I think it's paragraph 24 to --

3        THE COURT:  It is even before that.  List of search

4   terms, key words and phrases, to mark them or to score them

5   electronically.  The software systems that assists in them,

6   look for search terms, and then they redact various things.

7   It's hard to say that description doesn't match what a lot of

8   young lawyers do.

9        Your view is this is different because the plaintiff

10  here couldn't be pulled out of that document review and brought

11  to a client meeting?

12        MR. KIRSCHENBAUM:  That's right, your Honor.  An

13  associate hired at a law firm is on track to do a much broader

14  scope.

15        THE COURT:  What if they are not?  They are on track

16  to do it, but they just don't get to you for the first year and

17  so all they do is document review.  In those cases then a firm

18  has to say, we are recategorizing you from associate to

19  paralegal and here is your overtime bonus check.

20        MR. KIRSCHENBAUM:  Let's take a look at the executive

21  exemption cases or the administrative exemption cases where

22  somebody is told, look, you are going to be -- you're in charge

23  of the people here at Burger King.  But if it gets really busy,

24  I want you to be flipping burgers.  And then it turns out that

25  that Burger King becomes the most incredibly popular Burger

DAVMLOLC

1    King in the world and this guy is stuck flipping burgers the

2    whole time.

3          The question is still, what is the greater extent of

4    his duties?  What does that person rely upon?  And your

5    first-year associate is hired as a lawyer.

6          THE COURT:  I'm not sure what is the basis for saying

7    that a first-year associate is hired as a lawyer and that

8    document review will not make up more than 15 or 20 percent of

9    what they do.

10          MR. KIRSCHENBAUM:  I'm sorry?

11          THE COURT:  I thought that you were suggesting that

12   what makes this person not engaged in the practice of law is

13   that document review of this caliber is all this person does,

14   and that's not enough to make you a professional.  It's not

15   enough to make you an attorney.  What distinguishes this person

16   from a random first year at a large firm who is doing a

17   significant amount of document review is that person can be and

18   often is whisked away to a client meeting, which I think may

19   not be accurate.  But you're suggesting that they have a

20   broader range of things that they do and are at least

21   potentially likely to do, and so that makes them different from

22   your plaintiff here?

23          MR. KIRSCHENBAUM:  That's exactly what I was saying,

24   except much more eloquent.

25          THE COURT:  Cut it out, Mr. Kirschenbaum.

DAVMLOLC

1          It's not clear to me that that's an accurate

2     portrayal.  It's not clear to me that the statute contemplates

3     some requirement that doc review only make up a certain

4     percentage of your year's billings.

5          MR. KIRSCHENBAUM:  I think it's a primary duties

6     question or, put differently, a totality of the duties

7     question.  A first-year associate could be asked by a partner

8     to make photocopies for a day and maybe he will.  Does that

9     change the fact that he is a lawyer and he was hired so that

10    the firm could rely on him to be a lawyer?  I don't think so.

11         THE COURT:  There is very little guidance really out

12    there.  The Department of Labor hasn't given much that would

13    allow us to determine this in a legal setting, right?

14         MR. KIRSCHENBAUM:  That's right.  I think that the

15    closer question would be the governing boards of ethics in

16    relevant jurisdictions.

17         THE COURT:  The relevant jurisdictions here are what,

18    Ohio, where the document review was, North Carolina, where he's

19    licensed, or New York, where the employer is based?

20         MR. KIRSCHENBAUM:  I have to say, he's licensed in

21    California.

22         THE COURT:  He's licensed in California.  I'm sorry.

23    He is licensed in California, he is a resident of North

24    Carolina, doing document review in Ohio for a New York law

25    firm.  Is that right?

DAVMLOLC

1        MR. KIRSCHENBAUM:  Yes.  The New York nexus, I don't

2   think, if it comes down to which jurisdiction's definition of

3   practice of law, I would have a hard time saying that it would

4   be the New York's definition.

5        THE COURT:  Supervised by New York attorneys, right?

6        MR. KIRSCHENBAUM:  He is supervised by New York

7   attorneys and I believe ultimately by attorneys who have been

8   admitted pro hac vice into the District of Ohio, including

9   local counsel who probably is straight up admitted into

10  District of Ohio.

11       I surmise that ultimately that the definition of the

12  practice of law is going to have some resounding similarities

13  in each of these jurisdictions that --

14       THE COURT:  Probably.  What I'm saying is, I don't

15  think it's a Department of Labor question as much as it is an

16  ethical, is the person's work governed by the ethical

17  restrictions that govern the practice of law in any

18  jurisdiction, ethical restrictions that govern the practice of

19  law.

20       MR. KIRSCHENBAUM:  Can be performed by a nonlawyer.

21  That I think is the relevant question.

22       THE COURT:  Can document review be conducted by a

23  nonlawyer ever?  Is that the question I have to answer, or

24  document review in this case?

25       MR. KIRSCHENBAUM:  I think defendants might propose a

DAVMLOLC

1    different test.  But we recently had an oral argument in a

2    similar case against another law firm and their argument was,

3    well, we agree that this work can be performed by a nonlawyer,

4    and somehow the fact that a lawyer is performing it makes it

5    constitute the practice of law.  I don't know.

6              THE COURT:  I am not sure courts really want to go

7    down this road.  I don't want to be deciding what percentage of

8    a lawyer's work really requires a law degree and what

9    percentage doesn't more than I want to decide what portion of a

10   doctor's employment could have been done by a nurse

11   practitioner or something like that.

12             MR. KIRSCHENBAUM:  The easy thing here, it's 100

13   percent of this individual's work.  You really only are looking

14   at one set of work and saying is that the practice of law or

15   not.  I agree --

16             THE COURT:  There might be full-fledged associates at

17   Skadden who are hoping that document review, when it's 90

18   percent of what you do, is enough to get you covered by the

19   Fair Labor Standards Act, because they get time and a half on a

20   salary that's 160 a year, right?

21             MR. KIRSCHENBAUM:  Then you might have to ask

22   yourself, the more naughty question is, since they are, in

23   general, signed on board to be lawyers and can be and are at

24   times pulled on to other tasks and then the question is, what

25   percentage of time and whatever his primary duties, et cetera,

DAVMLOLC

1   et cetera.  In this case, that problem doesn't really exist

2   because we exactly what this person's duties are and he

3   performs them 100 percent of the time of his employment.

4          THE COURT:  We know it's alleged and that's all we

5   have got at this point.  This is a motion to dismiss.  We are

6   not going outside of the pleadings and no one is asking us to

7   do that.

8          The other issue is whether Skadden is properly pled to

9   be a joint employer.  And so the test, which I'm very familiar

10  with --

11         MR. KIRSCHENBAUM:  You wrote it.

12         THE COURT:  I helped write it, I suppose.

13         There are a number of allegations in the complaint

14  that are upon information and belief.  It is often tricky, it

15  seems to me, in an employment context to expect the plaintiff

16  to be able to basically go undercover and come up with all the

17  facts as to what the employer's business arrangements are.  But

18  you do have a number of allegations that are upon information

19  and belief, and so I think the defendants take issue with that.

20         What should I be doing with those?

21         MR. KIRSCHENBAUM:  The core assertion is that

22  plaintiff was doing Skadden work and the interesting dynamic

23  here is that in the professional exemption end of their

24  argument defendants are trying to characterize this as the

25  practice of law, which ostensibly makes it more likely that the

DAVMLOLC

1   work that he was doing was for Skadden.  Skadden lawyers were

2   there, Skadden lawyers definitely had to have issued --

3          THE COURT:  This is not an uncommon arrangement.  I

4   guess this would be very broadly applied.  If a law firm

5   utilizes a contract attorney firm, like the other defendant in

6   this case, to bring on temporary lawyers to assist on

7   short-term but very labor-intensive projects, are they de facto

8   joint employers?

9          MR. KIRSCHENBAUM:  There would be some factual

10  question.  We have over the course of this litigation

11  interviewed several other contract attorneys, and I think that

12  to the extent your Honor refers to broader implications, I

13  don't know that there is a sweeping answer that applies to

14  every time a contract attorney is hired by a law firm.  I think

15  it's a case-by-case analysis.  I think it depends on the level

16  of trust between the law firm and the contract attorney

17  company.  There are times that a law firm will just give a pile

18  of work to contract attorney and say, here, please do this

19  document review.  There are other times when the law firm says,

20  we want to be there, we want to have two people on the floor,

21  we want to interview people, we want to play a more active

22  role.  And I think in this case Skadden played an active enough

23  role to be considered Mr. Lola's employer.

24         THE COURT:  I should have given the defendants the

25  first crack at this since it's their motion, but you were

DAVMLOLC

1    standing and it's just an easy target, Mr. Kirschenbaum.

2              Let's talk about the joint employer issue.

3              MR. GERSHENGORN:  Sure, your Honor.  I think your

4    Honor teed up the issue just before, which is, just because a

5    law firm could potentially outsource some of the heavy lifting

6    of discovery, does it make a contract attorney relationship a

7    joint employer relationship?  The defendants' position is the

8    answer to that is no.

9              THE COURT:  They certainly had the power to hire and

10   fire him from the project, right?

11             MR. GERSHENGORN:  I'm sorry.

12             THE COURT:  Skadden had the power to hire and fire

13   Mr. Lola from this project.  If they were unsatisfied they

14   could have just said, you're done, maybe, Tower would have kept

15   him on their list, but certainly he wouldn't have been working

16   on this matter, right?

17             MR. GERSHENGORN:  Mr. Lowell was a Tower employee,

18   your Honor.

19             THE COURT:  There is no question that he's a Tower

20   employee, right?  There is no argument that Tower hasn't been

21   alleged to have been an employer.  This is only with respect to

22   Skadden.  Once he stopped working on this project, he would be

23   working for some other law firm, presumably?

24             MR. GERSHENGORN:  Presumably, he would be working as a

25   Tower employee for some other law firm, that's correct, your

DAVMLOLC

Honor.

THE COURT:  If this goes on for a year, then the issue is, does that make him a Skadden employee?  They certainly have the power to fire him from the project, right.  No dispute about that.  They don't have to ask Tower, we are not happy with Mr. Lowell, so could you please send us someone else.  And if they say no, sorry, we don't have anybody else, you have to stick with him, they are stuck.  You are not saying that.

MR. GERSHENGORN:  Well, your Honor, I think there is somewhat of a factual issue there that the Court not even need address right now.  But the issue in regards to that is that if Mr. Lowell in this case was a Tower employee.  If Skadden was not happy with Mr. Lowell, that's an issue that Skadden would have with Tower.

THE COURT:  There is a test here that I've got to apply and you're asking me to dismiss Skadden because there are insufficient facts that would make Skadden Mr. Lowell's employer.  And so those issues, those factors include who had the power to hire and fire him, who supervised and controlled his work schedule and the conditions of his employment, who decided the rates and method of payment, who maintained the employment records.

Much of this is beyond the pleadings, it seems to me, but we might as well take a crack at these.  What are the realities here?

DAVMLOLC

1          MR. GERSHENGORN:  I think the reality is, from what

2    Mr. Kirschenbaum said before, it's in regards to supervision.

3    Skadden certainly had some supervision over the project, your

4    Honor.  However, the Second Circuit has made it clear that that

5    supervision to the level of what Skadden had here would not

6    give rise to a joint employer argument for the plaintiffs.  And

7    that's a case that we cited to your Honor in your premotion

8    letter, the standing matter where the Second Circuit there said

9    supervision with respect to contractual warranties of quality

10   and time and delivery has no bearing on the joint employer

11   inquiry.  As such, supervision is perfectly consistent with the

12   typical legitimate subcontracting arrangement.  And I think

13   that's what the facts here present.  Based upon the pleadings

14   itself, your Honor --

15          THE COURT:  Hold on one second.  I have a jury note.

16          MR. GERSHENGORN:  What I was about to finish up saying

17   is, just based upon the pleadings itself, your Honor, the

18   defendant believes that the particular allegations are ripe for

19   a motion to dismiss.

20          THE COURT:  I mean, I don't have clear answers to some

21   of these factors, right?  You basically are just saying as a

22   matter of law a firm that retains the services of contract

23   employees, as is alleged here, is just not going to be a joint

24   employer?

25          MR. GERSHENGORN:  That's correct.  And I think,

DAVMLOLC

1    obviously to the first part is, defendants believe the Court

2    need not get to the joint employer argument, your Honor.  We

3    think that this case would be dismissed once the issue in

4    regards to professional exemption is resolved.

5         THE COURT:  Well, I think it's interesting.  I think

6    it's creative.  I think it's a bit of an uphill climb,

7    Mr. Kirschenbaum.  I say that with the greatest respect because

8    I know you from other cases, and I know how effective and

9    capable you are as an attorney.

10        I think this strikes me that this sounds like the

11   practice of law, even if it's not the most glamorous and

12   exciting aspects of the practice of law.  If the allegations

13   were that he was just doing photocopying or recruiting,

14   nonlawyer work, that would be an issue.  I think we will have

15   to brief this.  I don't think we will have a ton of precedent

16   to go off of, no authority directly on point, so we are going

17   to have to go to other places to get that authority.  Your

18   premotion letters identify some of those others sources.

19        Let's talk about a schedule.  I'm going to stay

20   discovery pending the resolution of the motion.  What do you

21   think?  How long will it take for the defendants to file their

22   motion?

23        MR. GERSHENGORN:  Your Honor, I think we can file the

24   motion by early December, just given that the last week of this

25   upcoming week is Thanksgiving holiday, if that's good for the

DAVMLOLC

1   Court.

2           THE COURT:  About 30 days or so.  The first week of

3   December puts us at December 6.  Is that all right?

4           MR. GERSHENGORN:  That's fine, your Honor.

5           THE COURT:  You are going to throw Mr. Kirschenbaum

6   right into another set of holidays.  Hanukkah is early this

7   year.

8           MR. KIRSCHENBAUM:  December 6 is the end of Hanukkah.

9           THE COURT:  December 6 is the very end of Hanukkah.

10  What is the last day of Hanukkah?

11          MR. KIRSCHENBAUM:  Probably, December 6.

12          THE COURT:  It won't affect you too much.  New Year's.

13  Everybody likes a little time at the end of the year.  How much

14  time do you think you need to respond.

15          MR. KIRSCHENBAUM:  I think the week after New Year's

16  is good for us.

17          THE COURT:  New Year's is a Wednesday.  So let's say

18  Friday the 10th.  That's all right?

19          MR. KIRSCHENBAUM:  Yes, your Honor.

20          THE COURT:  January 10 for the response.  And then a

21  reply, if any, how long do you think you need?

22          MR. GERSHENGORN:  Can we do the reply on January 31,

23  your Honor?

24          THE COURT:  I was going to say two weeks.  Let's say

25  the 24th.  Okay?

22

DAVMLOLC

1          MR. GERSHENGORN:  Sure.

2          THE COURT:  You don't have to do a reply if you don't

3    think it's necessary.  I generally don't decide these things

4    based on who has the longer briefs.  If you think that you've

5    said it all, you don't need to do a reply.  Let me know you're

6    not doing one if you decide not to, but I think the 24th should

7    be sufficient.

8          Once I have the papers, then if I think I need further

9    oral argument I'll schedule that.  I think this one might be

10   one where maybe I will.  Let's see what I get.  In the

11   meantime, we will see where we are.

12         Anything else comes up, is there any point in trying

13   to settle this before the motion is fully resolved?  What do

14   you think?

15         MR. KIRSCHENBAUM:  We are always open to settlement,

16   obviously.

17         THE COURT:  What do you think, Mr. Gershengorn?

18         MR. GERSHENGORN:  We have dealt with each other on

19   several matters.  We can talk.

20         THE COURT:  Talk.  I am not going to refer it to the

21   magistrate judge or mediation program unless you guys think it

22   would be useful.  If you think it would be useful, let me know

23   and I'll make the referral.  Otherwise, we will resolve this

24   one on the merits for now and then we take it after that.

25         Thanks very much again.  If anyone needs a copy of the

DAVMLOLC

1   transcript, you could take it up with the court reporter, but

2   not now.  Do it later.

3                                    o0o

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25