UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————

No. 13-cv-5008 (RJS)

———————————————

DAVID LOLA,
*on behalf of himself and all others similarly situated*,

Plaintiffs,

VERSUS

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, *et uno*,

Defendants.

———————————————

OPINION AND ORDER
September 16, 2014

———————————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff David Lola brings this putative collective action against Defendants Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden") and Tower Legal Staffing, Inc. ("Tower") for violations of the overtime provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, arising out of Lola's work as a contract attorney in North Carolina. Now before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Lola and other contract attorneys who performed the same work are exempt from the FLSA as licensed attorneys engaged in the practice of law. Skadden further argues that it should be dismissed because Lola has not adequately alleged that it acted as his employer. For the reasons discussed below, Defendants' motion is granted.

I. BACKGROUND

A. Facts

Lola worked for Defendants for approximately fifteen months starting in April 2012.[1] (FAC ¶ 9.) During this period,

---

[1] The facts are drawn from the First Amended Complaint (Doc. No. 17 ("FAC")), and are assumed to be true for purposes of this motion. In deciding the motion, the Court has also considered Defendants' supporting memorandum (Doc. No. 23 ("Mem.")), Lola's memorandum in opposition (Doc.

he worked in North Carolina and reviewed documents for Skadden in connection with a multi-district litigation pending in the United States District Court for the Northern District of Ohio (the "MDL Litigation"). (*Id.* ¶¶ 9, 30.) Although Lola is a licensed attorney, he is not admitted to practice law in either North Carolina or the Northern District of Ohio.[2] (*Id.*) North Carolina permits attorneys licensed in other states to provide legal services in North Carolina under certain limited circumstances. *See* 27 N.C. Admin. Code 2.5 Rule 5.5(c).

Lola's work during this period was strictly supervised by Defendants, and his "entire responsibility . . . consisted of (a) looking at documents to see what search terms, if any, appeared in the documents, (b) marking those documents into the categories predetermined by Defendants, and (c) at times drawing black boxes to redact portions of certain documents based on specific protocols that Defendants provided." (FAC ¶¶ 24–28.) Defendants provided Lola with the documents he reviewed, the search terms he was to use in connection with those documents, and the procedures he was to follow if search terms appeared. (*Id.*) He was paid $25 per hour for this work and worked between forty-five and fifty-five hours per week. (*Id.* ¶¶ 32–33.) He was paid at the same rate for any hours he worked in excess of forty hours per week. (*Id.* ¶ 34.) Other attorneys whom Defendants employed to work on the MDL Litigation performed similar work and were likewise paid hourly rates that remained the same for any hours worked in excess of forty hours per week. (*Id.* ¶¶ 16–17.)

During his employment, Lola was "explicitly informed by Tower that he was an employee of Tower for purposes of [the] project." (FAC ¶ 10.) Tower paid Lola and required him to comply with Tower's procedures. (*Id.*) However, Lola was also told that he needed to follow any procedures set by Skadden, and he worked under the supervision of Skadden attorneys. (*Id.* ¶¶ 11–12.) Skadden had the authority to terminate Lola's work on the MDL Litigation. (*Id.* ¶ 14.) A Skadden attorney also interviewed Lola for a "team lead position" on the MDL Litigation. (*Id.* ¶ 14.)

B. Procedural History

Lola filed the Complaint on July 18, 2013, and the First Amended Complaint on October 3, 2013. (Doc. Nos. 1, 17.) The First Amended Complaint asserts a single claim against Defendants for failure to pay Lola and the other members of the putative collective action an overtime wage rate of one-and-a-half times the regular rate for hours worked in excess of forty per week. Following a pre-motion conference on October 31, 2013, Defendants filed the instant motion to dismiss. (Doc. No. 22.) The motion was fully briefed on January 24, 2014. (Doc. No. 28.)

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

---

No. 26 ("Opp.")), and Defendants' reply memorandum (Doc. No. 28 ("Rep.")).

[2] At the pre-motion conference, Lola's counsel represented to the Court that Lola is in fact licensed in California, which Defendants did not dispute. (Doc. No. 30 ("PMC Tr.") at 12:20–21.) Although the Court assumes this representation to be correct for purposes of this opinion, none of the Court's analysis turns on the particular state where Lola is licensed.

2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

### III. DISCUSSION

Defendants move to dismiss the First Amended Complaint on two grounds. First, they argue that, taking the allegations of the First Amended Complaint to be true, Lola was exempt from the overtime provision of the FLSA as a licensed attorney engaged in the practice of law. Second, Skadden argues that Lola has failed to adequately plead that it was his employer. Because, as discussed below, the Court dismisses the First Amended Complaint on the first ground, it is unnecessary to consider the second.

The overtime provision of the FLSA requires employers to pay employees one and one-half times the regular rate of pay for any hours worked in excess of forty per week, 29 U.S.C. § 207(a)(1), but exempts from this requirement "any employee employed in a bona fide . . . professional capacity," *id.* § 213(a)(1). The statute does not itself define the terms of the professional exemption, but delegates the authority to do so to the Secretary of the Department of Labor ("DOL"). *Id.* (providing that "terms [may be] defined and delimited from time to time by regulations of the Secretary"). Pursuant to this grant of authority, the DOL has promulgated a number of rules defining the scope of the professional exemption, including the following:

> (a) The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also shall mean:
>
> (1) Any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof[.]

29 C.F.R. § 541.304.

The issue presented by Defendants' motion is whether, on the face of the First Amended Complaint, Lola is exempt from the FLSA overtime requirement by virtue of being "the holder of a valid license . . . permitting the practice of law . . . [who] is actually engaged in the practice thereof." The parties agree that Lola is a licensed attorney. (Mem. at 7; Opp. at 1.) They dispute, however, whether he was "actually engaged in the practice [of law]" during his employment. Defendants argue that even if, as the First Amended Complaint alleges, the work that Lola performed was neither "glamorous" nor "high-profile," reviewing documents in connection with pending litigation is a "core attorney function performed by attorneys on a daily basis [that] requires attorneys to use their legal training." (Mem. at 1.) Lola responds that his work was not the practice of law because it was "mechanical" and "did not involve the use of any legal judgment or discretion." (Opp. at 9.)

3

Before turning to the substantive questions presented by Defendants' motion – what the term "practice of law" means and whether, taking the allegations in the First Amended Complaint to be true, Lola engaged in the practice of law so defined – the Court addresses two preliminary issues: (1) whether, in interpreting 29 C.F.R. § 541.304, the Court should fashion an entirely new federal standard for the "practice of law" or adopt existing state standards, and (2) if the latter, which state's substantive law furnishes the relevant standard. For the reasons discussed below, the Court concludes that: (A) in applying 29 C.F.R. § 541.304, federal courts should adopt state law definitions of the "practice of law," (B) the law of the state in which the employee performed the work – in this case, the law of North Carolina – should control, and (C) under North Carolina law, Lola engaged in the practice of law.

### A. Incorporation of State Standards in Federal Common Law

In applying a federal regulation like 29 C.F.R. § 541.304, the Court would normally defer to an interpretation given by the promulgating agency, unless that interpretation was "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citations and internal quotation marks omitted). The Court cannot take that course here, since the parties have not cited – and the Court is unaware of – any DOL interpretive guidance about what it means for an employee to be "the holder of a valid license . . . permitting the practice of law . . . [who] is actually engaged in the practice thereof." Moreover, no United States Court of Appeals has yet addressed this question, which, so far as the Court is aware, has only been presented in two other federal cases, one of them in this District. *See Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, No. 13-cv-1432 (RA) (S.D.N.Y. Dec. 11, 2013); *Oberc v. BP PLC*, No. 13-cv-01382 (KMH), 2013 WL 6007211 (S.D. Tex. Nov. 13, 2013). In light of the absence of interpretive guidance from the DOL and controlling authority from the Second Circuit, the Court must determine how the regulation should be interpreted.

Although the interpretation of 29 C.F.R. § 541.304 is undoubtedly an issue of federal common law, "[i]t does not follow . . . that [its] content . . . must be wholly the product of a federal court's own devising." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991). The Supreme Court has instructed federal courts to "fill the interstices of federal remedial schemes with uniform federal rules *only* when the scheme in question evidences a distinct need for nationwide legal standards, or when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand." *Id.* (emphasis added) (internal citations omitted). Where these circumstances are not present, "federal courts should 'incorporat[e] [state law] as the federal rule of decision,' unless 'application of [the particular] state law [in question] would frustrate specific objectives of the federal programs.'" *Id.* (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)) (alterations in original); *see also Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2536 (2011) ("Recognition that a subject is meet for federal law governance . . . does not necessarily mean that federal courts should create the controlling law."); *Kimbell*, 440 U.S. at 727–28 ("Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules."); *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956) ("The scope of a federal right is, of course, a federal question, but that does not

4

mean that its content is not to be determined by state, rather than federal law.").

The Supreme Court has explained that "[t]he presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen*, 500 U.S. at 98. Thus, in *De Sylva v. Ballentine*, the Supreme Court held that the term "children," as used in the federal Copyright Act, must be interpreted according to state law, since "there is no federal law of domestic relations, which is primarily a matter of state concern." 351 U.S. at 580; *see also Reconstruction Fin. Corp. v. Beaver Cnty., Pa.*, 328 U.S. 204, 210 (1946) (holding that federal statute's use of term "real property" adopts state law because "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws").

Here, it is clear that the Court must adopt state law standards in interpreting the term "practice of law" under 29 C.F.R. § 541.304. First, the definition of the practice of law is, like the definition of domestic relations in *De Sylva* and the definition of real property in *Reconstruction Finance Corp.*, "primarily a matter of state concern." 351 U.S. at 580. States regulate almost every aspect of legal practice: they set the eligibility criteria and oversee the admission process for would-be lawyers, promulgate the rules of professional ethics, and discipline lawyers who fail to follow those rules, among many other responsibilities. Importantly, states also define and punish the unauthorized practice of law – that is, the practice of law by non-lawyers in circumstances where such practice is unlawful. Given that the regulation of lawyers and legal practice is an area in which state law occupies virtually the entire field, the adoption of state standards is particularly appropriate. *De Sylva*, 351 U.S. at 580; *Reconstruction Fin. Corp.*, 328 U.S. at 210.

Second, the DOL rule itself explicitly links the term "practice of law" with state licensing requirements. The exemption applies to "the holder of a valid license . . . permitting the practice of law . . . [who] is actually engaged in the practice thereof." 29 C.F.R. § 541.304(a)(1). Thus, the "practice" contemplated by the rule is practice pursuant to a valid license.[3] Since the licensing of lawyers is, as discussed, the exclusive province of the states, state law should also furnish the rule for whether an employee's work constitutes the practice of law pursuant to a license. This interpretation of the rule has been strongly implied by the DOL itself. In 1949, when it was considering revising the rules implementing the professional exemption, the DOL rejected a proposal to include architects and engineers in the exemption, reasoning that:

> The practice of law and medicine has a long history of state licensing and certification; the licensing of engineers and architects is relatively recent. While it is impossible for a doctor or lawyer legally to practice his profession without a certificate or license, many architects and engineers perform work in these fields without possessing licenses, although failure to hold a license may limit their permissible activities to those of lesser responsibilities.

Wage and Hour and Public Contracts Divisions, U.S. Department of Labor, Report and Recommendations of the

---

[3] As discussed in greater detail below at Part III.B.2, it is possible to practice law pursuant to a law license outside of the jurisdiction that issued that license.

Presiding Officer at Public Hearings on Proposed Revisions of Regulations, Part 541, at 77 (1949)[4]; *see also Belt v. EmCare, Inc.*, 351 F. Supp. 2d 625, 629 (E.D. Tex. 2005) (recounting history of DOL revisions to professional exemption regulations). In other words, it is a lawyer's license and his or her practice pursuant to that license that triggers the professional exemption. That the former is governed by state law strongly suggests that the latter should be as well.

Third, none of the factors that the Supreme Court has identified as warranting the creation of a nationwide federal standard applies here. The Court can identify no "distinct need for nationwide legal standards" on this issue, and the parties have cited no "express provisions in analogous statutory schemes [that] embody congressional policy choices readily applicable to the matter at hand." *Kamen*, 500 U.S. at 98. Nor would the adoption of state standards for the practice of law "frustrate [any] specific objectives" of the FLSA or its implementing regulations, since, as discussed, the rule implicitly contemplates adopting state law standards.

The parties cite *Oberc*, 2013 WL 6007211, *Henig*, No. 13-cv-1432 (RA) (S.D.N.Y. Dec. 11, 2013), and *Willcox v. Kirby*, No. 07-cv-359 (TWP), 2009 WL 78436 (E.D. Tenn. Jan. 9, 2009) for the proposition that the Court should formulate and apply a nationwide federal standard for what constitutes the "practice of law" under 29 C.F.R. § 541.304. (Mem. at 9–10; Opp. at 7.) However, *Willcox* does not stand for this proposition, and the Court respectfully disagrees with the approaches taken in *Henig* and *Oberc*.

The question presented in *Willcox* was whether the FLSA professional exemption applied to a state prosecutor even though she never engaged in the *private* practice of law. 2009 WL 78436, at *3. In a prior opinion, the *Willcox* court assumed that the exemption reached only the private practice of law and ruled that because under Tennessee law prosecutors are not permitted to engage in private practice, the exemption did not apply. *Id.* On reconsideration, the court reversed itself, recognizing that as a matter of federal law, the FLSA reaches both the private and governmental practice of law. *Id.* The *Willcox* court was not presented with, and thus did not address, whether federal courts should adopt state law definitions of the practice of law.

*Oberc* and *Henig* both confronted the issue of whether a licensed attorney who performs document review is engaged in the practice of law – the very question presented here. *Oberc*, 2013 WL 6007211 at *6; *Henig*, No. 13-cv-1432, Doc. No. 45. In *Oberc*, the court concluded that document review, as performed by the plaintiff in that case, was the practice of law because it required the use of "legal judgment" by the plaintiff. 2013 WL 6007211, at *6. In reaching this result, the *Oberc* court cited no authority, state or federal, for the standard it was applying, and did not articulate why the exercise of legal judgment was the standard for the practice of law. In light of the clear Supreme Court case law prescribing a different approach, *see, e.g.*, *Kamen*, 500 U.S. at 98, the Court declines to follow the approach of *Oberc*.

---

[4] In 1949, the rule was codified at 29 C.F.R. § 541.3(b), but used language nearly identical to what now appears at 29 C.F.R. § 541.304. The rule provided that the professional exemption applied, irrespective of salary, to "any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof." 29 C.F.R. § 541.3.

In *Henig*, a case pending in this District, Judge Abrams consulted state authority in formulating a standard for the practice of law. *Henig*, No. 13-cv-1432, Doc. No. 45 at 5:12–7:12. However, instead of adopting the law of any particular state, Judge Abrams created a three-pronged federal test based on general principles gleaned from the state law she examined. *Id.* at 7:12–20. The Court respectfully declines to take this approach. While there may well be some common principles that animate every state's definition of "practice of law," differences exist as well. *See, e.g.*, Pamela A. McManus, *Have Law License; Will Travel*, 15 GEO. J. LEGAL ETHICS 527, 538 (2002) ("As simple as it sounds to limit the practice of law to lawyers, states have wildly varying definitions of what activities constitute the practice of law."). Thus, the approach taken by *Henig* creates the possibility that a federal court could apply a definition of "practice of law" that does not track the standard of any particular state. As a result, the three-pronged test articulated in *Henig*, or any federal standard the Court might fashion based on its own review of the legal authority, could differ from the standards that would apply in any of the states related to this case. The Court is not convinced that this approach is preferable to the one contemplated by *Kamen*, *Kimbell*, and *De Sylva*, which is simply to adopt the relevant state standard.

For these reasons, the Court concludes that although interpretation of the term "practice of law" as used in 29 C.F.R. § 541.304 is an issue of federal law, the *content* of the federal rule should be determined in accordance with state law.

B. Choice of Law

The Court must next address which state's law supplies the relevant standard for the "practice of law." Specifically, the Court must decide whether to apply the definition of "practice of law" prevailing in North Carolina (where Lola worked), Ohio (where the MDL Litigation was pending), California (where Lola apparently was licensed), or New York (where Defendants reside). To answer this question, the Court must address (1) whether federal law or state law furnishes the relevant choice-of-law principles and (2) on those principles, which state's substantive law applies. The Court concludes that federal choice-of-law principles apply and that, on those principles, the Court must adopt the law of the state where Lola performed the work – that is, North Carolina.

1. State or Federal Choice-of-Law Principles

Before the Court considers which state's definition of "practice of law" to adopt, it must first consider whether the choice-of-law question should itself be resolved by state or federal law. If this were a case predicated on diversity jurisdiction, the answer would be clear: the Court would be required to apply the choice-of-law principles of the forum state, that is, New York. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980) ("Were this a diversity case, *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941), would require that we look to the choice of law doctrines of the forum state."). Because Lola asserts a federal claim, however, the analysis is more complicated: the Second Circuit has applied both state and federal choice-of-law principles to federal question cases. *Compare id.*, 629 F.2d at 795 ("This is a federal question case, however, and it is appropriate that we apply a federal common law choice of law rule in order to decide which of the concerned jurisdiction's substantive law of fraud . . . should govern."), *with Barkanic v. Gen. Admin. of*

*Civil Aviation of the People's Republic of China*, 923 F.2d 957, 961 (2d Cir. 1991) ("However, the fact that we are not compelled to apply state choice of law principles in this federal question case does not preclude us from relying on state law if we believe that doing so would best effectuate Congress' overall intent.").

The Second Circuit offered some guidance in this area in *In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001). In *Gaston*, a bankruptcy case, the Circuit explained that "federal choice of law rules are a species of federal common law" and that "the framework the Supreme Court has established for determining whether the creation of federal common law is appropriate must be utilized" to determine whether federal courts should apply federal choice-of-law principles. *Id.* at 605–06.[5] Specifically, federal courts should apply federal choice-of-law principles only if there is "'a significant conflict between some federal policy or interest and the use of state law.'" *Id.* (quoting *Atherton v. FDIC*, 519 U.S. 213, 218 (1997)). The inquiry here is thus similar to the one discussed in Part III.A: is there a significant federal policy or interest that would counsel against the adoption of state choice-of-law rules? If so, the Court should apply the federal choice-of-law standard; if not, the Court should adopt state choice-of-law principles.

The Court finds that although federal law should adopt state standards for what constitutes the "practice of law," there are compelling reasons *not* to adopt state choice-of-law principles in deciding which state's definition of "practice of law" to apply. First, although the former question (what is the "practice of law") falls squarely within the province of the states, the latter question (which state's definition to apply) does not. Put another way, although states are in the business of defining what constitutes the practice of law in their state, they are not in the business of determining which state's definition of practice of law should control the application of the FLSA in cases, like this one, where an employee's work is connected to several different states.

Second, applying state choice-of-law principles would require the Court to address a logically anterior question: *which* state's choice-of-law principles should apply? In the diversity context, there is a ready answer: the forum state's choice-of-law principles apply. *Corporacion Venezolana*, 629 F.2d at 795. That solution is unworkable here, however, because it would make the *content* of the FLSA dependent on the forum in which an FLSA claim is brought. In this case, for example, Lola could have brought his FLSA claim in federal court in North Carolina, rather than in this district. Conceivably, North Carolina's choice-of-law principles could lead to different results than New York's: for example, North Carolina's choice-of-law rules might point to the substantive law of the employer's principal place of business (New York), whereas New York's choice-of-law rules might point to the substantive law of the employee's place of work (North Carolina).[6] If the definitions of "practice of

---

[5] Although the narrow question in *Gaston* was whether bankruptcy courts "confronting state law claims that do not implicate federal policy concerns" should apply state or federal choice-of-law principles, 243 F.3d at 601–02, the discussion in *Gaston* extends beyond the bankruptcy context. Notably, *Gaston* did not rely solely on bankruptcy cases to support its analysis, and its "recognition that federal choice of law rules are a species of federal common law" does not appear to be limited to bankruptcy cases. *Id.* at 605–06.

[6] The Court takes no position on the actual content or application of these states' choice-of-law principles.

8

law" prevailing in New York and North Carolina differ – such that Lola practiced law under one definition, but not the other – then the *merits* of Lola's claim would depend on the federal forum in which he chose to proceed. In other words, adopting forum-state choice-of-law principles opens up the possibility that an employer's liability under the FLSA would depend on where the employee chose to sue. Such a rule would surely lead to chaos, since employers would be unable to predict ex ante whether they were, in fact, complying with the requirements of the FLSA, and parties would have every incentive to forum shop.

It is important to note that adopting state substantive rules, as discussed at Part III.A, creates no analogous problem. Just as there is nothing wrong with saying that the ability to inherit federal intellectual property rights depends on the state law of domestic relations, which may vary from state to state, *see De Sylva*, 351 U.S. at 580, there is nothing wrong with saying that whether an employee qualifies for the professional exemption depends on the state in which he worked. It is perfectly workable to say that an employee working in North Carolina is entitled to FLSA overtime, while someone doing the same work in New York is not. Employers can predict in advance where their employees are working. It is *not* workable to say that whether an employee working in North Carolina is entitled to overtime – that is, whether the FLSA required the employer to pay overtime – depends on the federal court in which the employee chose to sue. There must be a determinate answer to whether a particular individual doing particular work in a particular state for a particular employer was entitled to overtime under the FLSA.

For these reasons, the Court finds that there is a significant federal interest in fashioning a uniform federal choice-of-law rule to decide which state's definition of "practice of law" should control.

2. Application of Federal Choice-of-Law Principles

It is well established that "[t]he federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) (citation and internal quotation marks omitted). In conducting this analysis, "absent guidance from Congress, [federal courts] may consult the Restatement (Second) of Conflict of Laws." *Id.*

Here, it is clear that of the four states touching upon Lola's claim – North Carolina (where Lola worked), Ohio (where the MDL Litigation was pending), California (where Lola was licensed), and New York (where Defendants had their principal places of business) – North Carolina is the jurisdiction with the greatest interest in the litigation because Lola performed all of the work in North Carolina, and North Carolina is the state with the most interest in regulating the legal practice of individuals within its borders. This conclusion is supported by the Restatement, which provides:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires *that the services, or a major portion of the services, be rendered*, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in

9

which[] event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 196 (1971) (emphasis added).[7]

Of course, an FLSA claim is not the same as a breach of contract claim under a services contract: the former arises under a statute that mandates a floor that all employers must meet, whereas the latter arises out of private negotiations between employers and employees. Nevertheless, the rationales that motivate the Restatement's choice-of-law rule apply with equal force to the FLSA:

> Several factors serve to explain the importance attributed by the rule to the place where the contract requires that the services, or a major portion of the services, be rendered. The rendition of the services is the principal objective of the contract, and the place where the services, or a major portion of the services, are to be rendered will naturally loom large in the minds of the parties. Indeed, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the services, or a major portion of the services, are to be rendered would be applied to determine many of the issues arising under the contract. The state where the services are to be rendered will also have a natural interest in them and indeed may have an overriding interest in the application to them of certain of its regulatory rules. The rule of this Section also furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the place where the contract requires that the services, or a major portion of the services, are to be rendered will be readily ascertainable, of ease in the determination of the applicable law.

*Id.* § 196 cmt. c. Each of these rationales – the expectation of the parties, the regulatory interests of the state in which the employment is performed, and the interest in predictability – supports the application of a services-rendered rule in the FLSA context.

To be sure, a reasonable argument could be made that the definition of "practice of law" should be governed by the law of the state that issued the law license. After all, the exemption applies to "the holder of a valid license or certificate permitting the practice of law . . . [who] is actually engaged in the practice thereof," 29 C.F.R. § 541.304, so the "practice" contemplated is clearly practice pursuant to the license. Nevertheless, while there may be some

---

[7] Section 6 of the Restatement sets forth general choice-of-law principles and reads, in its entirety:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. These principles each bolster the Court's conclusion that the state with the greatest interest in determining whether work constitutes the practice of law is the state where that work is performed.

10

superficial appeal to this argument, it is ultimately unpersuasive. First, it is clear that the holder of a law license can practice law pursuant to that license outside of the jurisdiction that issued it. Here, for example, although Lola holds a license from California, he may practice law pursuant to that license in North Carolina. See N.C. Admin. Code 2.5 Rule 5.5(c) ("A lawyer admitted to practice in another jurisdiction, but not in this jurisdiction, does not engage in the unauthorized practice of law in this jurisdiction if the lawyer's conduct is in accordance with these Rules and . . . the lawyer provides legal services to the lawyer's employer or its organizational affiliates and the services are not services for which pro hac vice admission is required."). Thus, any legal work Lola might do in North Carolina still constitutes the practice of law pursuant to his California license: but for his out-of-state license, Lola could not practice law in North Carolina. *See* Part III.C. Second, a choice-of-law rule choosing the law of the state of licensure would prove unworkable where – as is often the case – an employee holds law licenses in more than one state.[8] Finally, as both common sense and the Restatement make clear, California's interest in the treatment of its licensees who work out-of-state is far outweighed by North Carolina's interest in regulating employment – including the authorized and unauthorized practice of law – within its own borders.

Accordingly, the Court concludes that, for purposes of the FLSA's professional exemption, as implemented by 29 C.F.R. § 541.304(a)(1), federal courts should look to the definition of "practice of law" that is prevailing in the jurisdiction where the work is performed. Since Lola performed all of his work in North Carolina (FAC ¶ 30), whether he practiced law must be examined using the standard prevailing in North Carolina.

C. Practice of Law in North Carolina

In North Carolina, the term "practice of law" is defined by statute. Section 84-2.1 of the North Carolina General Statutes provides:

> The phrase "practice law" as used in this Chapter is defined to be *performing any legal service* for any other person, firm or corporation, with or without compensation, specifically including . . . the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in *any legal work*; and to advise or give opinion upon the legal

---

[8] Admittedly, any choice of law rule might be stretched to its limits in the context of multi-district litigation. For example, if an employee's job required him to work in two or three different states, application of the services-rendered rule would point to multiple jurisdictions, each with potentially different definitions of the practice of law. Under those circumstances, it is unclear whether the appropriate course would be to apply the professional exemption separately to the work performed in each state, or whether it would be necessary to fashion some further principle for selecting a single jurisdiction. Similarly, choice-of-law rules adopting the law of the state where an employee's work is to be used or where the employers have their principal places of business would prove equally if not more problematic in situations where the employee's work was to be used in more than one state or where the employee had multiple employers with principal places of business in different states. Such is the nature of the endeavor, and it is always possible for creative lawyers and litigants to conjure elaborate and vexing hypotheticals. Nevertheless, while there may be scenarios in which the services-rendered rule could be tested, it can hardly be said that the alternative rules are in any way superior.

rights of any person, firm or corporation . . .

N.C. Gen. Stat. § 84-2.1 (emphases added). North Carolina courts typically read section 84-2.1 in conjunction with section 84-4, which defines the unauthorized practice of law as follows:

> Except as otherwise permitted by law, . . . it shall be unlawful for any person or association of persons except active members of the Bar, for or without a fee or consideration, to give legal advice or counsel, [or] *perform for or furnish to another legal services* . . .

N.C. Gen. Stat. § 84-4 (emphasis added); *see N.C. State Bar v. Lienguard, Inc.*, No. 11-cvs-7288, 2014 WL 1365418, at *6 (N.C. Super. Apr. 4, 2014). Thus, North Carolina's definition of the practice of law encompasses, at the very least, the provision of "legal services."

Of course, to say that the practice of law encompasses the performance of legal services is not, on its face, very helpful. Fortunately, the North Carolina State Bar (the "Bar"), which exercises disciplinary authority over attorneys licensed in North Carolina, *see* N.C. Gen. Stat. § 84-28(a), has issued a formal ethics opinion elaborating on the term "legal services."[9] In 2007, the Bar addressed the question: "May a lawyer ethically outsource legal support services abroad, if the individual providing the services is either a nonlawyer or a lawyer not admitted to practice in the United States (collectively 'foreign assistants')?" In a formal ethics opinion, the Bar's Ethics Committee responded:

> A lawyer may use foreign assistants for administrative support services such as document assembly, accounting, and clerical support. A lawyer may also use foreign assistants for limited *legal support services* such as *reviewing documents; conducting due diligence; drafting contracts, pleadings, and memoranda of law; and conducting legal research*. Foreign assistants may not exercise independent legal judgment in making decisions on behalf of a client. . . . The limitations on the type of legal services that can be outsourced, in conjunction with the selection and supervisory requirements associated with the use of foreign assistants, insures that the client is competently represented. See Rule 5.5(d). Nevertheless, when outsourcing legal support services, lawyers need to be mindful of the prohibitions on *unauthorized practice of law* in Chapter 84 of the General Statutes and on the prohibition on *aiding the unauthorized practice of law* in Rule 5.5(d).

N.C. State Bar Ethics Committee, 2007 Formal Ethics Op. 12 ("Ethics Op. 12") (Apr. 25, 2008) (emphases added).

Three aspects of the ethics opinion are significant here. First, the opinion groups document review under the class of tasks considered to be "legal support services," along with other quintessentially legal tasks like "drafting contracts, pleadings, and memoranda of law[,] and conducting legal research." Ethics Op. 12. Lola does not dispute – nor could he – that these other

---

[9] A "formal ethics opinion" is "a published opinion issued by the council [of the Bar] to provide ethical guidance for attorneys and to establish a principle of ethical conduct." 27 N.C. Admin Code 1D.0101(j).

12

tasks fall comfortably within the heartland of legal practice. (*See* PMC Tr. at 8:17–25; Opp. at 14.) Document review, in the view of the Ethics Committee, belongs in the same category.

Second, the ethics opinion draws an explicit distinction between legal support services, like document review, and "administrative support services," like "document assembly, accounting, and clerical support." Ethics Op. 12. Thus, contrary to Lola's suggestion, document review is not comparable to "copying and collating documents for [discovery] production." (Opp. at 17.) In the view of the Ethics Committee, the former is legal work, while the latter is administrative or clerical work.

Third and finally, the ethics opinion emphasizes that lawyers must not permit non-lawyers to perform legal support services, like document review, without supervision, lest they aid the unauthorized practice of law. In other words, document review, like other legal support services, constitutes the practice of law and may be lawfully performed by a non-lawyer only if that non-lawyer is supervised by a licensed attorney.

Lola argues that although certain kinds of document review might constitute the practice of law, the document review he performed was not the practice of law because it was so "mechanical" that a paralegal could have done it. (Opp. at 15–17.) Implicit in this argument is the assumption that the practice of law encompasses exclusively those tasks that only lawyers can lawfully perform. The Ethics Committee makes clear that this assumption is false: non-lawyers can perform limited legal services – including document review, "drafting contracts, pleadings, and memoranda of law[,] and conducting legal research" – so long as they perform those tasks under the supervision of a licensed attorney. Ethics Op. 12. Lola's contention that "document review can be of such a nature that it is obviously not the practice of law, regardless of who conducts it" is thus backward: in the view of the Ethics Committee, document review *is* the practice of law, regardless of who conducts it. The only difference between lawyers and non-lawyers is that the former can lawfully perform document review without supervision, while the latter cannot.

Of course, in this case, Lola was supervised, and in light of that supervision, his job presumably could have been performed by a non-lawyer. That, however, does not change the analysis. After all, whether or not document review is supervised does not change whether it is the practice of law; it only changes whether it is the *authorized* practice of law. A non-lawyer performing document review under supervision is still providing a legal service. Ethics Op. 12. Needless to say, a lawyer performing the same work is also providing a legal service.

Lola further argues that the practice of law encompasses only those tasks that require "the exercise of legal judgment and discretion." (Opp. at 12.) Lola cites no North Carolina authority for this proposition, which appears nowhere in North Carolina's statutory definition of the practice of law. *See* N.C. Gen. Stat. §§ 84-2.1, 84-4. Likewise, nothing in the Bar's ethics opinion suggests that whether document review constitutes a legal service depends on the amount of judgment and discretion it requires. *See* Ethics Op. 12. To be sure, there is some North Carolina authority for the proposition that the exercise of legal judgment is *sufficient* for an activity to constitute the practice of law. *Cf. Lienguard*, 2014 WL 1365418, at *10;

*LegalZoom.com, Inc. v. N. Carolina State Bar*, No. 11-cvs-15111, 2014 WL 1213242, at *13 (N.C. Super. Mar. 24, 2014). But these cases do not suggest that the exercise of legal judgment is *necessary* for the practice of law or that the absence of such an exercise of legal judgment takes the activity outside of the practice of law.[10]

More generally, the Court is not persuaded that the exercise of legal judgment and discretion is a *sine qua non* of legal practice. Even undisputedly legal services like the drafting of motion briefs and the negotiating of documents require the performance of tasks – checking cases to make sure quotations are accurately reproduced, conforming citations to the stylistic dictates of the *Bluebook*, ensuring that documents are free of grammatical and typographical errors – that require little to no legal judgment. As junior associates at law firms well know, these tasks are the bread and butter of much legal practice and essential to the competent representation of clients.

The standard that Lola urges is also at odds with the regulatory framework promulgated by the DOL. The basic regulation defining the professional exemption extends the exemption to any employee who is compensated at a baseline amount and

> [w]hose primary duty is the performance of work:
>
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300. The first of these categories is further defined at 29 C.F.R. § 541.301, which provides that an employee performs "work requiring advanced knowledge" if the work "is predominantly intellectual in character, and . . . [requires] the consistent exercise of discretion and judgment, as distinguished from . . . routine mental, manual, mechanical or physical work." *Id.* § 541.301(a)(1), (b). Thus, when applying the basic regulation, courts must inquire into the primary duties of the employee and whether those duties involve the exercise of judgment and discretion.

The regulation pertaining to lawyers and doctors, however, specifically provides that "[t]he requirements of § 541.300 and subpart G (salary requirements) of this part *do not apply* to the employees described in this section." 29 C.F.R. § 541.304(d) (emphasis added). Thus, the professional exemption for licensed attorneys and doctors applies regardless of whether those individuals meet the salary baseline and

---

[10] *Lienguard* and *LegalZoom* address the "scrivener's exception" to the unauthorized practice of law, which provides that "[the] mere[] typing or scrivening [of] a petition or legal document does not constitute the practice of law, so long as the non-attorney does not create the document, or advise on how the document should be prepared." *Lienguard*, 2014 WL 1365418, at *10; *see also LegalZoom.com*, 2014 WL 1213242, at *13. These cases make clear that the exception does not apply if the non-attorney takes any action beyond simply typing out a client's information exactly as the client provides it. *Lienguard*, 2014 WL 1365418, at *10; *LegalZoom.com*, 2014 WL 1213242, at *13. Nothing in the First Amended Complaint supports the application of the scrivener's rule to this case. Even if Lola's work was uninteresting and mechanical, he did more than simply type out information provided by others. (*See* FAC ¶¶ 27–28 (alleging that Lola applied "specific protocols that Defendants provided" in determining what to redact and how to categorize documents).)

14

regardless of whether they would otherwise qualify as professionals under the primary duty test.

The approach urged by Lola – under which the Court should scrutinize his precise job responsibilities to determine whether they required legal judgment and discretion – is at odds with this regulatory framework. The upshot of 29 C.F.R. § 541.304(d) is that licensed attorneys and doctors fall in a special class of workers that may be deemed to be professionals even without a fact-intensive inquiry into the nature of their job duties. To nevertheless engage in such an inquiry under the guise of parsing the "practice of law" would be to ignore the plain meaning of 29 C.F.R. § 541.304(d) and the intent of the DOL.

The Court is mindful that it appears unfair for an attorney not to receive overtime when performing a job that a non-attorney (properly supervised) might also perform. That result, however, is within the express contemplation of 29 C.F.R. § 541.304, which extends the FLSA exemption to employees who are *both* "the holder[s] of a valid license or certificate permitting the practice of law" *and* "actually engaged in the practice thereof." 29 C.F.R. § 541.304. The plain language of the regulation makes clear that the possession of a law license sets attorneys like Lola apart from non-attorneys engaged in the same work, so long as the work performed is, in fact, the practice of law.

To the extent that this result is unwise or unfair, especially in light of the employment prospects that many licensed attorneys now face, Congress and the DOL remain free to revisit the regulation or to promulgate a uniform federal standard that more narrowly defines the "practice of law." Until they do so, however, the Court is constrained to apply the regulation as written and to apply the definition of "practice of law" that is prevailing in the relevant state – here, North Carolina.

For these reasons, the Court concludes that, taking the First Amended Complaint to be true, Lola engaged in the practice of law during his employ with Defendants. Because a licensed attorney engaged in the practice of law is exempt from the FLSA's overtime provision, Lola's claim fails as a matter of law.

### IV. CONCLUSION

IT IS HEREBY ORDERED THAT Defendants' motion to dismiss the First Amended Complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 22 and to close the case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 16, 2014
New York, New York

\*   \*   \*

Plaintiffs are represented by D. Maimon Kirschenbaum, Denise A. Schulman, and Charles E. Joseph of Joseph, Herzfeld, Hester, & Kirschenbaum, 233 Broadway, 5th Floor, New York, NY 10017.

Defendants are represented by Stephanie L. Aranyos, Brian Gershengorn, and Edward Cerasia, II of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 1745 Broadway, 22nd Floor, New York, NY 10019.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-16-14