UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID LOLA, on behalf of himself and
others similarly situated,

                     Plaintiff,

    -against-                                        13-CV-5008 (RJS)

SKADDEN, ARPS, MEAGHER, SLATE &
FLOM LLP, and TOWER LEGAL
STAFFING, INC.,

                     Defendants.

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement") is entered into between Plaintiff David Lola and Opt-Ins Gerald Edwin Rush, II and Lisa Gale Lewis (hereinafter collectively referred to as "Plaintiffs") on behalf of themselves, and defendant Tower Legal Solutions d/b/a Tower Legal Staffing, Inc., ("Tower") and Skadden, Arps, Slate, Meagher & Flom LLP[1] ("Skadden") (collectively, "Defendants"), by and through their undersigned attorneys ) to fully and completely settle *Lola, et al. v. Skadden, Arps, Slate, Meagher & Flom, et al.*, No. 13 Civ. 5008 (RJS) (the "Wage-Hour Lawsuit").

WHEREAS, in the Wage-Hour Lawsuit, Plaintiffs have asserted a cause of action, claim, or demand based on alleged violations of the FLSA including, but not limited to, Plaintiffs' hours of work or payment of wages (including overtime wages);

WHEREAS, Tower denies that it has committed any wrongdoing or violated any federal, state, or local laws, vigorously disputes the claims asserted in the Wage-Hour Lawsuit, and continues to assert that it has strong and meritorious defenses to such claims; and

---

[1] Skadden is incorrectly identified in the Amended Complaint and Caption as Skadden, Arps, Meagher, Slate & Flom LLP.

WHEREAS, Skadden denies that it has committed any wrongdoing or violated any federal, state, or local laws, vigorously disputes the claims asserted in the Wage-Hour Lawsuit, and continues to assert that it has strong and meritorious defenses to such claims;

WHEREAS, Skadden further denies that it was an "employer" or "joint employer", within the meaning of federal, state or local laws, of any Plaintiff;

WHEREAS, the Parties have agreed that in order to avoid the expense and burdens of further litigation and after substantial, arms-length settlement negotiations, the Parties desire to resolve and settle the Wage-Hour Lawsuit, including releasing all claims and charges against Tower, including those claims concerning, relating to, or arising out of Plaintiffs' employment with Tower or alleged unpaid wages, and releasing all claims and charges concerning Skadden, upon the terms and conditions more fully set forth below.

IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED, by and among (i) the Plaintiffs, (ii) Defendant Tower, and (iii) Defendant Skadden, and intending to be legally bound that subject to the approval of the Court, this Wage-Hour Lawsuit shall be settled and dismissed, on the merits and with prejudice and the released claims, set forth in Paragraphs 4 and 5, shall be finally and fully compromised and settled in the manner and upon the terms and conditions hereafter set forth:

1. **Process for Approval of Settlement.** After receipt of the complete and fully executed Settlement Agreement, the Parties shall submit to the Court all papers necessary to obtain approval of this Settlement.

2. **Payment of Settlement Proceeds.** In consideration of the execution of this Settlement Agreement and promises and covenants contained herein, and in full, final, and complete settlement, the Parties acknowledge and agree that this Wage-Hour Lawsuit is settled and resolved for the total gross amount of Seventy-Five Thousand Dollars and No Cents

($75,000.00), inclusive of Plaintiffs' counsels' attorneys' fees, expenses and costs ("Gross Settlement Amount") to be paid entirely by Tower. Plaintiffs acknowledge that the Gross Settlement Amount is sufficient and adequate consideration in exchange for Plaintiffs' promises, releases and covenants as set forth below. Within twenty-one (21) days of the Court's final approval of this Settlement Agreement, Tower shall deliver to Plaintiffs' counsel Joseph & Kirschenbaum LLP, c/o Maimon Kirschenbaum, Esq., at 32 Broadway, Suite 601, New York, New York 10004; a settlement check for each Plaintiff, in an amount which Plaintiffs' counsel has already specified to Defendants, and which will be specified to the Court for approval at a Fairness Hearing, less applicable federal, state, and local taxes and other appropriate payroll deductions, which amount will be reported for tax purposed on a U.S. Internal Revenue Service ("IRS") Form W-2; a check made payable to each Plaintiff, in an amount which Plaintiffs' counsel has already specified to Defendants, and which will be specified to the Court for approval at a Fairness Hearing, which will be reported for tax purposes on an IRS Form 1099; and a check made payable to "Joseph & Kirschenbaum LLP" reflecting payment for attorneys' fees and expenses, which amount will be reported for tax purposes on an IRS Form 1099. Plaintiffs understand and agree that Defendants are providing then with no tax or legal advice, and make no representations regarding tax obligations or consequences, if any, related to this Agreement. Named Plaintiff Lola and Opt In Rush agree that they will each be solely responsible for any and all taxes payable by either of them with respect to the payments issued on a Form 1099 and agrees that each will timely file the appropriate income tax return(s) for calendar year reflecting the above payment, and will timely pay the taxes. Notwithstanding the foregoing, if any claim is asserted against Defendants or any of the Released Parties, by any taxing authority with respect to the payments provided for herein, Plaintiffs shall each hold harmless and indemnify Defendants and any of the Released Parties from any cost, loss, liability, expense, fine

and penalty, and attorneys' fees arising from any of the payments set forth herein and/or the extent of withholdings from same; provided, however, that Plaintiffs shall bear no responsibility for or in connection with the failure of Defendant Tower to make any employer's contributions to payroll taxes.

3. **Settlement Payments Do Not Trigger Additional Benefits**. All payments to Plaintiffs shall be deemed to be paid solely in the year in which such payments actually are received by the Plaintiffs. The Parties agree and Plaintiffs acknowledge that the payments provided for in this Settlement Stipulation are the sole payments to be made to the Plaintiffs and that the Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

4. **Comprehensive Waiver and Release of Claims against Tower**. Plaintiffs, in consideration of the Settlement Payment set forth in Paragraph 2, releases and forever discharges Tower, and its respective current, former, and future owners, directors, managers, officers, employees, and, in such capacities, administrators, fiduciaries, insurers, agents, attorneys, predecessors, successors, and assigns (and the current, former and future directors, managers, officers, employees, agents, attorneys, predecessors, successors, and assigns of such controlling shareholders, subsidiaries, affiliates, related companies, related entities, and divisions), and all persons acting by, through, under, or in concert with any of them, in their individual or representative capacities (Tower and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Tower Releasees"), from all actions, causes of action, claims, and demands whatsoever, whether known or unknown, whether asserted or unasserted, in law or equity, whether statutory or common law, whether federal, state, local, or otherwise,

including, but not limited to, any claims related to or arising out of any aspect of Plaintiffs' employment with Tower, any agreement concerning such employment, or the termination of such employment, which Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and assigns ever had, now have, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of the respective Plaintiff's execution of this Settlement Agreement, including, but not limited to:

      a.     any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims under the Age Discrimination in Employment Act of 1967, as amended, under the Employee Retirement Income Security Act of 1974, as amended, under the Occupational Safety and Health Act of 1970, as amended, under the Worker Adjustment and Retraining Notification Act of 1988, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Fair Labor Standards Act of 1938, as amended, under the Fair Credit Reporting Act of 1970, as amended, and under the Sarbanes-Oxley Act of 2002, as amended, and any and all claims of employment discrimination on any basis, of unlawful retaliation, or of other unlawful conduct, including but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Equal Pay Act of 1963, as amended, under the Civil Rights Act of 1870, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1871, as amended, under the Civil Rights Act of 1991, as amended, under the Americans With Disabilities Act of 1990, as amended, under the Rehabilitation Act of 1973, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended, under the Uniformed Service Employment and Reemployment Rights Act of 1994, as amended, under the Consolidated Omnibus Budget

Reconciliation Act of 1985 ("COBRA"), and any and all claims under the North Carolina Persons With Disabilities Protection Act, the North Carolina Equal Employment Practices Act, the North Carolina Wage and Hour Act, or any other state wage payment laws, the North Carolina Retaliatory Employment Discrimination Act, and any and all claims under the New York State Continuation Coverage (New York "Mini-COBRA"), under the New York State Human Rights Law, under the New York City Human Rights Law, under the New York Labor Laws, and under the New York State False Claims Act;

   b. any and all claims under any other federal, state, or local labor law, civil rights law, fair employment practices law, human rights law, family and medical leave law, occupational safety and health law, whistleblower protection law, and equal pay law;

   c. any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, fraud, prima facie torts or other tort;

   d. any and all claims based on the design or administration of any of Tower's employee benefit plan or program, or arising under any Tower policy, procedure, or employee benefit plan; any and all claims for wages, commissions bonuses, vacation pay or other paid time off, employee benefits equity-based compensation, or other compensation or payments of any kind or nature, or for continued employment with Tower in any position; and

   e. any and all claims for monetary recovery, including, but not limited to, back pay, front pay, loans, liquidated, compensatory, and punitive damages, and attorneys' fees, experts' fees, disbursements, and costs.

5. **Comprehensive Waiver and Release of Claims against Skadden.** Plaintiffs, in consideration of the Settlement Payment set forth in 2, releases and forever discharges Skadden, and its respective current, former, and future partners, directors, managers, officers, employees, and, in such capacities, administrators, fiduciaries, insurers, agents, attorneys, predecessors, successors, and assigns (and the current, former and future partners, directors, managers, officers, employees, agents, attorneys, predecessors, successors, and assigns of its affiliates), and all persons acting by, through, under, or in concert with any of them, in their individual or representative capacities (Skadden and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Skadden Releasees"), from all actions, causes of action, claims, and demands whatsoever, whether known or unknown, whether asserted or unasserted, in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to or arising out of any aspect of Plaintiffs' purported employment and/or employment with Skadden, any agreement concerning such employment, or the termination of such employment, which Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and assigns ever had, now have, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of the respective Plaintiff's execution of this Settlement Agreement, including, but not limited to:

    a.    any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims under the Age Discrimination in Employment Act of 1967, as amended, under the Employee Retirement Income Security Act of 1974, as amended, under the Occupational Safety and Health Act of 1970, as amended, under the Worker Adjustment and Retraining Notification Act of 1988, as amended, under

the Family and Medical Leave Act of 1993, as amended, under the Fair Labor Standards Act of 1938, as amended, under the Fair Credit Reporting Act of 1970, as amended, and under the Sarbanes-Oxley Act of 2002, as amended, and any and all claims of employment discrimination on any basis, of unlawful retaliation, or of other unlawful conduct, including but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Equal Pay Act of 1963, as amended, under the Civil Rights Act of 1870, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1871, as amended, under the Civil Rights Act of 1991, as amended, under the Americans With Disabilities Act of 1990, as amended, under the Rehabilitation Act of 1973, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended, under the Uniformed Service Employment and Reemployment Rights Act of 1994, as amended, under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under the North Carolina Persons With Disabilities Protection Act, the North Carolina Equal Employment Practices Act, the North Carolina Wage and Hour Act, or any other state wage payment laws, the North Carolina Retaliatory Employment Discrimination Act, and any and all claims under the New York State Continuation Coverage (New York "Mini-COBRA"), under the New York State Human Rights Law, under the New York City Human Rights Law, under the New York Labor Laws, and under the New York State False Claims Act;

      b.    any and all claims under any other federal, state, or local labor law, civil rights law, fair employment practices law, human rights law, family and medical leave law, occupational safety and health law, whistleblower protection law, and equal pay law;

      c.    any and all claims of slander, libel, defamation, invasion of privacy,

8

intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, fraud, prima facie torts or other tort;

  d. any and all claims based on the design or administration of any of Skadden's employee benefit plan or program, or arising under any Skadden policy, procedure, or employee benefit plan; any and all claims for wages, commissions bonuses, vacation pay or other paid time off, employee benefits equity-based compensation, or other compensation or payments of any kind or nature, or for continued employment with Skadden in any position; and

  e. any and all claims for monetary recovery, including, but not limited to, back pay, front pay, loans, liquidated, compensatory, and punitive damages, and attorneys' fees, experts' fees, disbursements, and costs.

6. **Comprehensive Waiver and Release of Claims against Plaintiffs.** Defendants, in consideration of each Plaintiff's Comprehensive Waiver and Release of Claims as set forth in Paragraphs 4 and 5 and for other promises and covenants contained in this Agreement, releases and forever discharges each Plaintiff, and his or her respective current, former, and future heirs, executors, administrators, fiduciaries, insurers, agents, attorneys, successors, and assigns, and all persons acting by, through, under, or in concert with any of them, in their individual or representative capacities (Plaintiffs and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Plaintiff Releasees"), from all actions, causes of action, claims, and demands whatsoever, whether known or unknown, whether asserted or unasserted, in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to or arising out of any aspect of Plaintiffs' purported employment and/or employment with Tower and/or Skadden, any

9

agreement concerning such employment, or the termination of such employment, which the Tower Releasees or Skadden Releasees ever had, now have, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of the respective Plaintiff's execution of this Settlement Agreement, including, but not limited to claims arising under all Federal, State and local statutes, regulations, decisional law and ordinances and all contract and tort laws.

7.   **Scope of Waiver of Claims.** Nothing in this Settlement Agreement shall constitute a waiver of any rights to enforce the terms of this Settlement Agreement or waiver of claims that cannot be legally waived or of claims that arise after the date this Settlement Agreement is executed. Nothing in this Settlement Agreement shall be construed to prohibit Plaintiffs from filing a charge with or participating in any investigation or proceeding conducted by the EEOC or comparable state or local agency. However, Plaintiffs each agree that they have released Tower and Skadden from any and all liability arising from the laws, statutes, and common law listed in Paragraphs 4 and 5, above. As such, each Plaintiff is not and will not be entitled to any monetary or other comparable relief on his/her behalf resulting from any proceeding brought by any Plaintiff, the EEOC, or any other person or entity, including but not limited to any federal, state, or local agency. With this release of claims in this Settlement Agreement, each Plaintiff specifically assigns to Defendants his/her right to any recovery arising from any such proceeding.

8.   **Settlement Contingent on Court Approval.** This Settlement Agreement is contingent upon the Court's approval of the Settlement. If the Court refuses to grant Final Approval, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement will become void and will not be used for any purpose in connection with any further litigation in the Wage-Hour Lawsuit or any other lawsuit, administrative or other

legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations in Paragraph 9 below will remain in effect.

9. **Non-Disclosure and Communications.**

   a. Plaintiffs and Plaintiffs' counsel will not contact the media or utilize any social media regarding this Settlement or its terms. If contacted regarding this Settlement, Plaintiffs and Plaintiffs' counsels' response can be "no comment" or be limited solely to words to the following effect: "The matter has been resolved."

   b. Plaintiffs' Counsel confirms that they will not upload and have removed any reference from their website and any promotional material about the Wage-Hour Lawsuit.

   c. Nothing in this Settlement Agreement shall prevent Defendants Tower or Skadden from filing any required regulatory disclosures regarding the Wage-Hour Lawsuit or complying with its obligations under the law.

   d. Plaintiffs' Counsel will promptly notify Defendants' Counsel of any third-party demand that they disclose information pertinent to this Settlement.

10. **Mutual Full Cooperation.** The Parties will fully cooperate with each other and with the Court to accomplish the terms of this Settlement Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Settlement Agreement. The Parties will use their best efforts to effectuate this Settlement Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

11. **Non-disparagement.** Each Plaintiff specifically agrees that he/she will not make derogatory statements, either oral or written about Tower (which specifically includes its Founder and CEO, Ms. Leslie Firtell) or Skadden that relate to any matter occurring prior to the

date of this Agreement, including but not limited to Plaintiffs' work and/or employment with Tower.

If any employer or prospective employer of any Plaintiff seeks a reference or makes any other inquiry concerning his/her employment with Tower, provided that Plaintiffs expressly direct the employer or prospective employer to contact only the Director of Human Resources at Tower, Tower agrees to only disclose the Plaintiffs' dates of employment, last position held, and last rate of pay. Plaintiffs acknowledge that Tower has numerous employees, many of whom may not be aware of this Agreement or instructions, and that Plaintiffs must direct the employer or prospective employer to contact only the Director of Human Resources at Tower regarding any inquires or requests for a reference.

12. **Future Employment.** Plaintiffs agree that he/she will not be employed or reemployed by Tower, and Plaintiffs will not accept, apply for or otherwise seek employment with Tower or Skadden at any time hereinafter.

13. **Consideration and Revocation of Agreement.** Each Plaintiff has a period of twenty-one (21) days to consider whether to enter into and execute this Settlement Agreement. Each Plaintiff understands that this twenty-one (21) day period shall begin to run on the day Plaintiff receives this Settlement Agreement. Each Plaintiff may revoke and cancel this Settlement Agreement and the release of claims at any time within seven (7) days after signing this Settlement Agreement ("Revocation Period") by delivering written notice of revocation to Ogletree, Deakins, Nash, Smoak & Stewart, P.C., c/o Stephanie L. Aranyos, Esq. and Brian J. Gershengorn, Esq. 1745 Broadway, 22nd Floor, New York, New York 10019, brian.gershengorn@ogletreedeakins.com, stephanie.aranyos@ogletree.deakins.com, fax: (212) 492-2501. To be effective, revocation can be made by hand-delivery, email or other written means as long as it is <u>received</u> no later than close of business on the seventh day following

Plaintiff's execution of his/her Settlement Agreement. This Settlement Agreement is not effective until Plaintiff has signed it and the revocation period has expired without revocation ("Effective Date"). If any Plaintiff does not sign or if any Plaintiff revokes consent to this Settlement Agreement, this Settlement Agreement shall be null and void with respect to all Plaintiffs.

14. **Complete Agreement.** No representation, promise, or inducement has been offered or made to induce any Party to enter into this Settlement Agreement, which contains the entire, complete, and integrated statement of all Settlement terms and supersedes all previous oral or written agreements. This Settlement Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives, provided any such amendment or modification is not contrary to law or an order of the Court.

15. **Notifications and Communications.** Any notifications or communications made in connection with this Settlement Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

JOSEPH & KIRSCHENBAUM LLP
c/o Maimon Kirschenbaum, Esq.
c/o Denise Schulman, Esq.
32 Broadway, Suite 601
New York, New York 10004
maimon@jk-llp.com
denise@jk-llp.com
Tel.: (212) 688-5640
Fax: (212) 981-9587
*Attorneys for Plaintiffs*

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
c/o Brian J. Gershengorn, Esq.
c/o Stephanie L. Aranyos, Esq.
1745 Broadway, 22nd Floor
New York, New York 10019
brian.gershengorn@ogletreedeakins.com
stephanie.aranyos@ogletree.deakins.com
Tel.: (212) 492-2500
Fax: (212) 492-2501
*Attorneys for Defendants*

16. **No Admission of Liability and No Concession as to the Merits.** Defendants deny that they violated the law in any manner alleged in or related to the Wage-Hour Lawsuit. Skadden further denies that is or was, at any time, an "employer" or "joint employer" with

respect to any Plaintiff. Each Plaintiff acknowledges and agrees that the payments made pursuant to this Settlement Agreement are not to be construed as an admission of liability on the part of any Defendant or released party. The Parties enter into this Settlement Agreement to avoid the risks, uncertainty, expense and burden of further litigation. This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of any Defendant. Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of Defendants; or (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of Defendants in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency or other forum or tribunal in which Defendants is or becomes a party, other than in such proceedings as may be necessary to consummate or enforce the Stipulation, the Settlement or the Final Order.

17.     **Waiver.** The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation. No rights under this Settlement may be waived except in writing and signed by the waiving party.

18.     **Miscellaneous.** This Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or such party's counsel participated in the drafting of the Settlement. This Stipulation constitutes the entire agreement among these parties, and no representations, warranties or inducements have been made to the parties concerning this Stipulation, other than the representations, warranties and covenants contained and memorialized in such documents.

19. **Execution In Counterparts.** This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Fax or .pdf signatures shall be deemed original copies for the purposes of this Settlement Agreement.

20. **Binding Effect.** This Stipulation shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

21. **Governing Law.** This Stipulation shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles. The Court shall retain jurisdiction over actions or proceedings based upon, including the enforcement of, this Stipulation or any of its terms. All parties to this Stipulation shall be subject to the jurisdiction of the Court for all purposes related to this Stipulation.

22. **Headings.** The Paragraph headings in this Settlement Agreement are for the convenience of reference only, do not constitute a part of this Settlement Agreement, and shall not be deemed to limit or affect any provision hereof.

23. **Knowing and Voluntary Agreement.** The Parties enter into this Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties have not been coerced, threatened, or intimidated into signing this Settlement Agreement and have consulted with legal counsel regarding the Settlement Agreement.


Dated: New York, New York
      December ___, 2015

By: _____
    DAVID LOLA

Dated: New York, New York
      December 12, 2015

By: _____
    GERALD EDWIN RUSH, II

19. **Execution In Counterparts.** This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Fax or .pdf signatures shall be deemed original copies for the purposes of this Settlement Agreement.

20. **Binding Effect.** This Stipulation shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

21. **Governing Law.** This Stipulation shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles. The Court shall retain jurisdiction over actions or proceedings based upon, including the enforcement of, this Stipulation or any of its terms. All parties to this Stipulation shall be subject to the jurisdiction of the Court for all purposes related to this Stipulation.

22. **Headings.** The Paragraph headings in this Settlement Agreement are for the convenience of reference only, do not constitute a part of this Settlement Agreement, and shall not be deemed to limit or affect any provision hereof.

23. **Knowing and Voluntary Agreement.** The Parties enter into this Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties have not been coerced, threatened, or intimidated into signing this Settlement Agreement and have consulted with legal counsel regarding the Settlement Agreement.

Dated: New York, New York
December 13, 2015

By: _____
DAVID LOLA

Dated: New York, New York
December __, 2015

By: _____
GERALD EDWIN RUSH, II

15

Dated: New York, New York
December 14, 2015

By: _____
LISA GALE LEWIS

Dated: New York, New York
December ___, 2015

TOWER LEGAL SOLUTIONS D/B/A
TOWER LEGAL STAFFING, INC.

By: _____
Print Name: Leslie Farell
Title: CEO

Dated: New York, New York
December 14, 2015

JOSEPH & KIRSCHENBAUM LLP

By: _____
MAIMON KIRSCHENBAUM
DENISE SCHULMAN
32 Broadway, Suite 601
New York, New York 10004
maimon@jk-llp.com
denise@jk-llp.com
Tel.: (212) 688-5640
Fax: (212) 981-9587

*Attorneys for Plaintiffs*

Dated: New York, New York
December ___, 2015

SKADDEN, ARPS, MEAGHER,
SLATE & FLOM, LLP

By: _____
Print Name: David E. Schwartz
Title: Partner

Dated: New York, New York
December 15, 2015

16