UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-3-16
```

DAVID LOLA, *on behalf of himself and all others similarly situated*,

                              Plaintiffs,

        -v-

SKADDEN, ARPS, MEAGHER, SLATE & FLOM LLP, *et uno*,

                              Defendants.

No. 13-cv-5008 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

On December 22, 2015, the Court approved the parties' Stipulation and Agreement of Settlement (the "Settlement") (Doc. No. 53). (Doc. No. 54.) In approving the Settlement, the Court noted that it would subsequently address in more detail the Settlement's non-disclosure and waiver and release of claims provisions. In several recent decisions, district courts have rejected settlements with excessively broad general releases or restrictive confidentiality provisions, finding them contrary to the policy goals of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See, e.g.*, *Guerra-Alonso v. W. 54 Deli, Corp.*, No. 14-cv-7247 (WHP), 2015 WL 3777403 (S.D.N.Y. May 22, 2015); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2015 WL 129723 (S.D.N.Y. Jan. 9, 2015). In light of these decisions, the Court deems it useful to offer some guidance on its approval of the Settlement. For the reasons set forth below, the Court finds that the Settlement's release of claims and non-disclosure provisions are fair and reasonable given the particular circumstances of this case.

I. DISCUSSION

It is generally the role of the district court to evaluate the fairness of each individual settlement based on the circumstances of any given case. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-37 (S.D.N.Y. 2012). "The ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* at 335 (quoting *Mosquera v. Masada Auto Sales, Ltd.*, No. 09-cv-4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011)); *see also Boucaud v. City of New York*, No. 07-cv-11098 (RJS), 2010 WL 4813784, at *1 (S.D.N.Y. Nov. 16, 2010) ("In deciding whether to approve a stipulated settlement, the Court must scrutinize the settlement for fairness." (citations and internal quotation marks omitted)). The Second Circuit has noted that the "FLSA's primary remedial purpose" is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). In *Wolinsky*, the district court outlined five factors to consider in evaluating the fairness of a settlement: (1) "the plaintiff's range of possible recovery," (2) "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses," (3) "the seriousness of the litigation risks faced by the parties," (4) "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel," and (5) "the possibility of fraud or collusion." 900 F. Supp. 2d at 335 (citations and internal quotation marks omitted). In other words, the role of the district court is to ensure that an FLSA settlement is the product of fair bargaining on the part of both parties.

A.  Waiver and Release of Claims Provisions

Some courts scrutinizing FLSA settlement have refused to approve settlements with broad releases of claims, concluding that they conflict with the FLSA's remedial purposes. *See, e.g.*, *Camacho*, 2014 WL 6985633, at *4 (rejecting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"); *Thallapaka v. Sheridan Hotel Associates LLC*, No. 15-cv-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) ("The Agreement here contains a general release that is far too sweeping to be fair and reasonable." (internal quotation marks omitted)).  However, there is nothing inherently unfair about a release of claims in an FLSA settlement.  Applying the *Wolinsky* factors to this case, the Court concludes that the mutual releases of claims in the Settlement are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers.  Specifically, the Court is satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel.  Weighing the litigation risk involved in taking this case to trial against the full payment of unpaid overtime and partial liquidated damages provided by the Settlement, Plaintiffs could reasonably conclude that the provisions releasing claims were an acceptable compromise.  This is particularly true given that the waivers in the Settlement do not release any actual, existing, or meritorious claims, nor do they release any future claims.

Moreover, the releases of claims in the Settlement are mutual, binding both Plaintiffs and Defendants.  In the recent cases where courts have rejected settlements that included broad releases waiving non-FLSA claims against defendants, the releases were not mutual and protected only the defendants in the action.  *See, e.g.*, *Camacho*, 2014 WL 6985633, at *4;

*Thallapaka*, 2015 WL 5148867, at *1.  Indeed, at least one court has explicitly stated that a mutual release of claims is acceptable because it "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."  *Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015).  Here, the Settlement provides for both a waiver of claims against Defendants and a waiver of claims against Plaintiffs, assuaging concerns that the waiver unfairly benefits only Defendants.  (Settlement at 4-10.)  Accordingly, the Court sees no reason to withhold approval of the Settlement on the basis of the agreement's waiver and release of claims provisions.

## B.  Non-Disclosure Provision

With respect to the Settlement's non-disclosure provision, several courts in this district have also recently rejected FLSA settlements containing confidentiality provisions that restrict plaintiffs' ability to talk about the settlement. *See, e.g.*, *Souza*, 2015 WL 6798807, at *4 ("[T]he Court is of the view that it would be the very rare case, if any, where confidentiality terms in a settlement agreement would be appropriate in resolving a wage-and-hour lawsuit given the policy concerns underlying the FLSA. There is nothing before the Court in this case to justify confidentiality."); *Guerra-Alonso*, 2015 WL 3777403, at *1 (finding confidentiality provision "contrary to public policy"); *Camacho*, 2015 WL 129723, at *2 (rejecting confidentiality provision imposing "an obligation on the plaintiff – a gag order, really – to refrain from discussing any aspect of the case or the settlement").

Although the Court is mindful that, in certain cases, confidentiality provisions may excessively restrict plaintiffs' ability to discuss settlements and thus "run[] afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair,"

the Court finds that this concern is not present here. As discussed above with respect to general releases, the FLSA likewise imposes no *per se* bar on confidentiality provisions in settlements. Rather, the fairness of restrictions on the parties' ability to disclose details of a settlement depends on the particular circumstances of any given case.

Here, the Court is satisfied that the confidentiality provision in the Settlement is fair and that it does not run afoul of the FLSA's remedial purposes. Specifically, the "Non-Disclosure and Communications" provision does not unduly restrict Plaintiffs' ability to discuss the Settlement, which has been publicly docketed and is accessible to anyone interested in reading it. It merely states that Plaintiffs and Plaintiffs' counsel "will not contact the media or utilize any social media regarding this Settlement or its terms," and that, if contacted about the Settlement, Plaintiffs and their counsel shall respond "'no comment' or be limited solely to words to the following effect: 'The matter has been resolved.'" (Settlement at 11.) Although this provision does place some limits on Plaintiffs' ability to discuss the settlement, the limit is not absolute. The provision mainly restricts Plaintiffs' contact with the media, not their general ability to discuss the Settlement. In any event, since Plaintiffs would be free to decline commenting on the case in response to any future inquiries by the press or otherwise, it is difficult to see why they should be barred from adopting such a posture in advance of settling the matter. Indeed, the Court is aware of no reason why a settling plaintiff should be allowed to accept less than the maximum potential recovery on the basis of litigation risk, but not be permitted to make non-monetary concessions, such as minor restrictions on his right to comment on the case, for the same reason. And since no one can *force* Plaintiffs to opine on the case in the future anyway, it is by no means irrational or improper for Plaintiffs to compromise words for dollars as part of a global, arms-length settlement. Once again, the Court concludes that this provision is the result

5

of fair bargaining between well-represented parties and embodies a reasonable compromise that does not conflict with the FLSA's purpose of protecting against employer abuses.

## II. CONCLUSION

For the reasons set forth above and stated in the Court's December 22, 2015 Order (Doc. No. 54), IT IS HEREBY ORDERED THAT the Court grants final approval of the Settlement. As previously stated, the Court shall retain exclusive and continuing jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:      February 3, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE